[No. 7,740.—Department One.]

# SAN DIEGO WATER CO. *v.* CITY OF SAN DIEGO.

59 517|
109 320|

WATER COMPANY—CORPORATION—MUNICIPAL CORPORATION—POWER OF
BOARD OF TRUSTEES—ULTRA VIRES—CONTRACT FOR SUPPLY OF WATER.—
The plaintiff made a proposal, in writing, to the Board of Trustees of the
defendant, to construct certain works for supplying the city with water
if the Board would agree to purchase of the plaintiff a specified amount
of water per month for five years; and, responding to this proposal, the
Board passed a resolution whereby they agreed, in behalf of the city, to
take a certain amount of water during the period specified and to pay
therefor one hundred dollars per month. The company having accepted
this proposition, and in performance of its part of the contract con-
structed its works and furnished the water to the city, the city paid
therefor until July 31, 1878, but since that time has refused to pay; and
this action was brought to recover the contract price of the water.

*Held:* The plaintiff, under the laws under which it was incorporated, as-
sumed the obligation to furnish water, to the extent of its means, to the
city in case of fire or other great necessities, free of charge; and also to
furnish water to the inhabitants of the city for family uses, upon proper
demand, at reasonable rates, to be fixed by a Board of Commissioners.
If the water was furnished for municipal necessities the contract was
void, because the company could not, under its charter, charge, nor could
the city contract, for that which the company was under obligation to
furnish "free of charge;" and if for family uses (for the use of the
occupants of the city's prisons, hospitals, poor-houses, schools, etc.) the
contract was equally void, because the rates which the company were
authorized to charge had not been fixed according to law.

ID.—ID.—ID.—ID.—ID.—MUNICIPAL AID TO PUBLIC OR PRIVATE IMPROVE-
MENTS.—The charter gave no power to the Board to aid in the construc-
tion of improvements partaking of a public character, and had the char-
ter contained such a grant, the Board could not, in the exercise of the
power, contract to pay money, or to appropriate the revenues of the city,
to aid in constructing the works of a *private* corporation.

ID.—ID.—ID.—ID.—ID.—ID.—ID.—The contract being void, no subse-
quent acts of the officers of the city in ratification of it were binding on
the city.

APPEAL from a judgment for the defendant and from an
order sustaining the demurrer to plaintiff's complaint in the
Superior Court of the County of San Diego. McNEALY, J.

*Leach* and *Parker*, for Appellants.

There are numerous instances where contracts entered into
by municipal corporations have been held not to be within
the meaning of similar charter provisions. (*Smith* v. *Mayor
etc. of New York*, 21 How. 1; *Detwiller* v. *Mayor of New*

*York,* 46 id. 218; *People* v. *Flagg,* 17 N. Y. 584; *Harlem Gas Company* v. *Mayor etc.,* 33 id. 309.)

But even if this contract did come within the meaning of Section 14 of the said charter, and was not let to the lowest bidder, the plaintiff has performed the contract and defendant has received the benefit, and has ratified the same. (*Lucas* v. *San Francisco,* 7 Cal. 463; *Argenti* v. *San Francisco,* 27 id. 255; *People* v. *San Francisco,* id. 655; *People* v. *Swift,* 31 id. 26.)

The power to make the contract is found in the fifth and sixth paragraphs of Section 10 of said charter, which gives the city power to provide for the extinguishment of fires, etc. (Pol. C., § 4354.)

The meritorious consideration for the contract as alleged in the first and third counts of the complaint is not the water sold and delivered, but the erection of works and machinery, and conducting the water to a place where the city required it, and could compel the water company to furnish it. A supply of water is an absolute necessity in "watering and cleaning the city and protecting it against fire"—powers expressly given to cities; and a municipal corporation, like a trading one, may enter into any contract necessary to enable it to carry out the powers conferred upon it, and adopt all the ordinary or usual means which may be necessary to the full exercise and discharge of its powers expressly given. (*City of Galena* v. *Corwith,* 48 Ill. 423; *Ketchum* v. *City of Buffalo,* 14 N. Y. 356; *Douglas* v. *Virginia City,* 5 Nev. 146; *McPherson* v. *Foster,* 43 Iowa, 48; *Williamsport* v. *Commonwealth,* 84 Penn. St. 487; *Le Couteulx* v. *Buffalo,* 33 N. Y. 333.)

*M. A. Luce* and *Will M. Smith,* for Respondent.

The plaintiff can not contract for, or receive from, the defendant, pay for water furnished for any purpose except family uses. (Stats. of Cal., 1858, p. 219, § 4; *Spring Valley W. W.* v. *San Francisco,* 52 Cal. 111.)

The defendant could not contract, as in complaint alleged, because of a limitation of her power in Section 14 of her charter. (Stats. of Cal. 1872, p. 292, § 14; *McCracken* v. *San Francisco,* 16 Cal. 619; *Zottman* v. *San Francisco,* 20

id. 96; *Wallace* v. *The Mayor etc.*, 29 id. 180; *McCoy* v. *Briant*, 53 id. 247; *Brady* v. *Mayor etc.*, 16 How. Pr. 432.)

But appellant claims that, having received the benefits of the contract and made part payment therefor, the City has ratified the contract so as to bind her. That rule does not apply to contracts . made by a municipal corporation outside of the mode provided by charter, unless the ratification is in the mode provided. (*Branham* v. *The Mayor*, 24 Cal. 585.)

McKee, J.:

In 1875 the San Diego Water Company made a proposal in writing to the Board of Trustees of the city of San Diego to erect hoisting works, lay down pipes, and do all other things necessary to bring water from the San Diego River for supplying the city of San Diego with pure, wholesome water, if the Board would agree, in behalf of the city, to purchase from the Company one hundred thousand gallons of water per month, for five years, at one dollar per thousand gallons. Responding to this proposal, the Board, at a regular meeting, passed a resolution whereby they agreed, in behalf of the city, to use and consume not exceeding two hundred thousand gallons of water per month for five years, and to pay the Company from the time they commenced to furnish the water to the city one hundred dollars per month, in warrants to be drawn on the General Fund of the City Treasury.

The Company accepted and agreed to these terms, and, in performance of its part of the contract, brought water into the city December 1, 1875; and from that time onward has furnished the city with water according to its agreement; and the city has paid for the water thus furnished from December, 1875, until July 31, 1878, since which time it has refused to pay; and the action in hand was brought to recover the amount due under the contract for the water furnished from July 31, 1878, to November 30, 1880.

As a corporation formed for the purpose of supplying the inhabitants of the city with pure, fresh water, the plaintiff is a creature of the laws under which it incorporated; and derives its rights, duties, and obligations entirely from them. When it incorporated under those laws it assumed two obli-

gations: 1. To furnish water to the extent of its means to the city of San Diego in case of fire, or other great necessity, free of charge; 2. To furnish water to the inhabitants of the city for family uses, upon proper demand, at reasonable rates, to be fixed by a Board of Commissioners. (Stats. 1858, § 4.) The first did not bind the Company to furnish water free for *all* municipal purposes. But it bound the Company to furnish it free to the city "for the extinguishment of fires, the flushing of sewers, and the watering of parks, or such other necessities as are incidental to the direct employment by the municipality of its government or police powers." The second bound the Company to furnish water to the city, standing *in loco parentis* for the occupants or inhabitants of its prisons, hospitals, poor-houses, schools, and other institutions to which water is supplied for family uses, at reasonable rates, to be fixed in the manner required by the law. (*Spring Valley W. W.* v. *San Francisco*, 52 Cal. 111.)

Whence it would seem to follow, that in performance of the obligations imposed upon the company by its charter, the company had no right to charge or contract for water furnished to the city, for the use of the inhabitants under its charge in its several public institutions, in any other mode than that prescribed by the charter. The charter having prescribed the mode of contracting, the mode is the measure of the power and must be observed, or the instrument by which the corporation undertakes to contract is of no binding force or validity.

Whether, therefore, the company furnished the water which is the subject-matter in controversy in this case, to the city of San Diego for "municipal necessities," or "for family uses," the contract was one which it had no power to make. If furnished for municipal necessities the contract is void, because the company could not, under its charter, charge for that which it was under obligation to furnish to the city "free of charge." If for "family uses," the contract was equally void, because the rates which the company were authorized to charge had not been fixed according to law.

Besides, the city itself had no power under its charter to make an engagement with the company to pay for water

which the latter was bound by the law of its incorporation to furnish free for "municipal necessities," and at reasonable rates to be fixed as required by the law, "for family uses."

It is true, that by the fifth paragraph of Section 10 of the charter of the city, power was given to the Board of Trustees to provide for the cleaning of drains and sewers; and, by the sixth paragraph of the same section, to provide for the extinguishment of fires. For those purposes the Board, in the exercise of the powers expressly conferred upon it, might, as a means necessary to an end, enter into a contract for obtaining a supply of water, if none had been provided. But the provisions of the charter of the city must be construed in subordination to the laws of the State under which the plaintiff incorporated; and as those laws had provided, through the plaintiff, for a supply of water for extinguishing fires and flushing the sewers of the city, free of charge, the Board, in the exercise of its incidental powers, could not contract to pay the plaintiff for water for which the latter could not charge. Such a contract would be in violation of the policy of the law in granting privileges to water corporations, and a contract made in violation of law by the officers of a municipal corporation is not binding upon the city.

But it is urged that the meritorious consideration for the contract between the plaintiff and the city, as stated in the first and third counts of the complaint, is not the water furnished to the city, but the erection of works and machinery, and conducting the water to the place where the city required it.

If that were the consideration and nature of the resolution adopted by the Board of Trustees, there is nothing in the charter of the city to sustain it. For the charter contains no express grant of power to the Board to aid in the construction of improvements partaking of a public character, and in the absence of such authority the action of the Board would be unauthorized. But even if there were in the city charter a grant of such power, the Board could not, in the exercise of the power, contract to pay money, or to appropriate the revenues of the city to aid in constructing the works of a *private* corporation. Such a contract would be in violation of the Constitution and laws of the State, be-

yond the scope of the corporate powers of the city, and any instrument in writing made, or any resolution adopted, for that purpose would be void.

Moreover, if the contract sought to be enforced is one to aid in the erection of the works of the plaintiff, it was not made according to the provisions of Section 14 of the city charter, which requires that "all contracts for building and repairing or other works, which the Trustees are authorized to make for said city, must be let to the lowest bidder, after advertising for bids." No publication was made, by order of the Board or otherwise, for sealed proposals; no bids were made, and no contract was let to the lowest bidder, and as the contract between the plaintiff and the city was made without complying with the requirements of the charter, it is a nullity. And the contract being void, for want of power in the plaintiff, for want of power in the Board of Trustees of the city, and for non-conformity with the requirements of the charter of the city, no subsequent acts of the officers of the city in ratification of it would be binding upon the city. (*Smith* v. *The City of Newburgh*, 77 N. Y. 130, 136.)

Judgment affirmed.

McKINSTRY, J.; MORRISON, C. J., and ROSS, J., concurred.