[S. F. No. 11416. In Bank.—August 20, 1925.]

JOHN H. TAYLOR, Respondent, v. CHARLES H. SPEAR et al., Constituting State Board of Harbor Commissioners, etc., Appellants.

[1] HARBOR COMMISSIONERS—STATE AGENCY—JURISDICTION.—The State Board of Harbor Commissioners is one of the state agencies of the state of California and is invested with control of the harbor of San Francisco under the provisions of article IX, part III, title VI, chapter 1, of the Political Code, and its jurisdiction is prescribed by section 2524 of said code.

[2] ID.—POWERS OF COMMISSIONERS—LEASING OF PREMISES—LIMITATION.—Under the statute, the State Board of Harbor Commissioners has not the right to lease or renew a lease of any premises under its control except as provided in the statute, and any use of such premises by another, permitted by it, under the statute, may be terminated at any time by it on thirty days' previous notice to the party or parties so using the same.

[3] ID.—TENURE—IMPROVEMENTS ON PROPERTY.—Where a party took possession of property under the control of the State Board of

Harbor Commissioners for use as a bootblack-stand, with formal written notice that the resolution of the Board authorizing the same expressly stated that his occupancy was to continue during the pleasure of the Commission, and he also had imputed knowledge of the statutory limitation on the power of the Commission to permit the use of the property only for a time terminable upon thirty days' notice, he acquired no additional right to a greater permanency of tenure by reason of having made improvements to the premises.

[4] ID.—LIMITATION OF TENURE—ESTOPPEL.—The State Board of Harbor Commissioners could not by its conduct create an estoppel in favor of one occupying property under its control, which would have the effect of enlarging that party's tenure beyond the time embraced within the express limitations of the code.

[5] ID.—DISCRETION OF BOARD—INTERFERENCE BY COURT.—The large discretion with which the State Board of Harbor Commissioners is invested, under section 2524 of the Political Code, is one with which, if honestly exercised, a court of equity will not interfere, or substitute its judgment for that of the Board, even if the conclusion of the latter should be erroneous and work hardship upon the individual.

[6] ID.—EXTENSION OF TENURE—GOOD CONDUCT OF TENANT—FRAUD.— One renting property under the control of the State Board of Harbor Commissioners for business purposes is not entitled to an extension of tenure, without the consent of the Board, by reason of making improvements on the property, nor by reason of his conducting his business thereon carefully, reputably and without cause for complaint; nor is a charge against the Board of fraud, corruption, bad faith, improper motives, disregard of duty, abuse of power, or violation of law sustained by reason of the fact that it terminated the tenure notwithstanding the above circumstances, as it had the discretion to do so under the statute.

[7] ID.—PUBLIC INTEREST—OCCUPATION OF PROPERTY BY PARTICULAR INDIVIDUAL.—The public, as such, have no interest in the occupancy of any portion of property under the control of the State Board of Harbor Commissioners by any particular individual, and hence the continued occupancy or use of such premises heretofore occupied and used by a particular individual is a matter of no such public concern as would justify the interposition of a court of equity to prevent the Commission from terminating his occupancy; neither is it a matter of public concern of which the courts can take cognizance as to whether one class of business or another shall be accorded space, or a particular space thereon, these matters being exclusively within the discretion of the Commission.

[8] ID.—TERMINATION OF OCCUPANCY—MOTIVES OF BOARD—EVIDENCE. In this suit for an injunction to prevent the State Board of Harbor Commissioners from terminating the occupancy by plaintiff of

certain space on premises under the control of said Board it is held that there was no evidence of improper motives on the part of the Board.

(1) 29 Cyc., p. 302, n. 88.    (2) 29 Cyc., p. 302, n. 88.    (3) 21 C. J., p. 1188, n. 90, p. 1199, n. 82 New.    (4) 21 C. J., p. 1194, n. 41. (5) 29 Cyc., p. 302, n. 88.    (6) 29 Cyc., p. 303, n. 89.    (7) 29 Cyc., p. 302, n. 88.    (8) 29 Cyc., p. 302, n. 88.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Reversed.

The facts are stated in the opinion of the court.

W. T. Plunkett for Appellants.

Edward D. Mabson for Respondent.

RICHARDS, J.—The plaintiff commenced this action against the defendants, who, at the time of the commencement thereof, constituted the Board of State Harbor Commissioners, having control of the harbor of San Francisco, whereby he sought an injunction preventing the said Board from terminating his occupancy of certain space or premises within the Ferry Building, a state structure upon the waterfront of the city and county of San Francisco, under the control of said Board, and from leasing, letting, or setting apart said space or premises to any other person or from interfering with the said plaintiff's occupancy of the same. He alleged in substance that for more than four years last past he had been the owner of a bootblack-stand and business located upon such space or premises in said building as a tenant of the state of California, paying a certain amount of money each month as rent for the use and occupation of said space or premises occupied by his said bootblack-stand and business; that he had operated and conducted his said business upon said premises during the period of his tenancy thereof in an efficient and businesslike manner and without complaint of any kind being made to the said Board of State Harbor Commissioners as to the manner in which his said business had been conducted; and that during the period of his four-year tenancy thereof

he had built up a large and profitable bootblack business;
that during the year 1922 he had, with the permission of
the said Board, caused to be erected upon said space or
premises a small building at a cost of more than two thou-
sand dollars, within which to operate and conduct his said
bootblack-stand and business, and that he had ever since
conducted and was now conducting his said stand and busi-
ness therein; that on or about the first day of November,
1923, the said State Board of Harbor Commissioners made
and served or caused to be served upon plaintiff a notice
terminating his said tenancy and ordering him thereby
to vacate within thirty days thereafter the said space and
premises theretofore used and occupied by plaintiff's said
bootblack-stand and business. The plaintiff then proceeds
to make certain averments with relation to the state of
the laws of California requiring the letting or setting apart
of buildings erected on property subject to the control of
said Board of Harbor Commissioners by competitive bid-
ding, but since such is not the law affecting the space or
premises occupied by said plaintiff, these averments need
not be considered. The plaintiff further alleges that certain
other persons whose names are unknown to plaintiff have
made application to said Board to have said space or prem-
ises now occupied by him set apart, leased or let to them,
to the exclusion of plaintiff, and that said Board has agreed
with such persons to so do in order to satisfy certain politi-
cal obligations incurred by them in a political compaign
and to recompense said persons for political services, and
that unless restrained by the court the said Board threatens
to and will oust said plaintiff from said space and premises
and thereby ruin and destroy his said bootblack business
and will issue a permit to said other persons to enter upon
and occupy said space and premises to the exclusion of said
plaintiff, to his irreparable injury and damage, for which
he has no plain, speedy or adequate remedy at law. Where-
fore he seeks an injunction to prevent said defendants in
their said official capacity from doing the aforesaid acts. To
this complaint the defendants presented a general and also
a special demurrer upon a number of specified grounds,
which the trial court overruled; whereupon the defendants
answered, denying for the most part specifically the aver-

ments of the plaintiff's complaint, except that they admit the occupancy by the plaintiff of the space or premises in question, and in that regard aver that the plaintiff's sole right to occupy the same was that acquired by him under and by virtue of the provisions of section 2524 of the Political Code, and which was terminable thereunder upon thirty days' notice at the pleasure of said Board, and which was terminated by the giving of said notice by said Board, in accordance with said section of the Political Code. The cause proceeded to trial upon the issues as thus framed and was submitted to the trial court for decision. Thereafter the court made and filed its findings of fact, which were generally in the plaintiff's favor. The court found that the plaintiff had entered into the possession and occupancy of the space or premises designated in his complaint about four years prior to the inception of the action under a permission or license received from the said Board of Harbor Commissioners in the form of that set forth in the defendants' answer, and had since continued in the use and occupancy thereof thereunder; that he had made the improvements in his structure thereon at the time and cost and with the permission and consent of said Board as detailed in his said complaint; that he had at all times conducted his bootblack-stand and business in a clean, orderly, efficient, and business-like manner and without complaint, and that he was a fit and proper person to have the use and occupancy of said premises and to conduct said business; and that he had built up a good and profitable bootblack business thereon, and had at all said times served and was still serving the public in a satisfactory manner; that on or about November 1, 1923, the said Board had served upon said plaintiff a notice terminating his occupancy of said premises and directing him to vacate the same within thirty days thereafter, which said notice to vacate was in the form set forth in the defendants' answer to said complaint; that neither said Board nor any of its members gave plaintiff any reason for terminating his occupancy of said space or premises except that one of their number stated verbally to said plaintiff, "Well, Taylor, you ought to know the reason. You got it through politics and you are losing it through politics." In that connection the court finds "That the said

Board of Harbor Commissioners have not agreed, in satisfaction of political obligations, to assign the space or premises occupied by plaintiff's building, bootblack-stand and bootblack business to other persons to the exclusion of plaintiff, and to permit other persons to enter into possession of said space occupied by plaintiff's building, bootblack-stand and bootblack business and exclude the plaintiff therefrom. The court infers and finds from the evidence, however, that the said notice given to the plaintiff was for the purpose and with the intent of having plaintiff's said location vacated by him in order that some other person favored by defendants might be permitted by them to establish in plaintiff's present location or in approximately the same location, a bootblack stand in the place and stead of plaintiff and there conduct a bootblacking business to the exclusion of plaintiff.'' The court further proceeds to find that said Board in seeking to remove said plaintiff from his occupancy of said premises has not acted in the manner provided by law or in good faith, but that the action of said defendants in the premises was and is unreasonable and arbitrary and not in execution or furtherance of their public trust, nor for the benefit of the public at all, and that no public interest will be served, aided, advanced or benefited by removal of plaintiff or his said stand or business from said location, or by the establishment by any other person of the bootblackening-stand or business in plaintiff's present location or approximately in said location. The court makes certain other findings in denial of the truth of certain of the averments of the defendants' answer which need not here be noted. As conclusions of law from the said findings of fact the court finds ''That discretion of the State Board of Harbor Commissioners in terminating plaintiff's occupancy of space was and is not exercised in good faith, or on reasonable grounds, or in furtherance of the purpose for which the trust administered by them exists, but on the contrary the action of said Board in the premises was and is arbitrary and unreasonable. That by reason of the unrecouped expenditures made by plaintiff in erecting his said building or structure with the knowledge, permission and consent of said Board of Harbor Commissioners, said Board was not and is not justified in removing plaintiff from his said loca-

tion and under the existing circumstances as hereinbefore found is estopped from removing plaintiff from his said location.

"That plaintiff is entitled to judgment enjoining defendants from enforcing the notice of termination of his use and occupancy of the space in question at the northerly end of the Ferry Building, or from terminating plaintiff's occupancy of said space by reason of any matters or things occurring up to the time of commencement of this action."

The judgment of injunction follows in form the aforesaid conclusions of law, and from said judgment the defendants prosecute this appeal.

[1] The State Board of Harbor Commissioners is one of the state agencies of the State of California and is invested with control of the harbor of San Francisco under the provisions of article IX, part III, title VI, chapter 1, of the Political Code. The portion of the bay of San Francisco and the properties, improvements, rights, privileges, easement, and appurtenances connected therewith or appertaining thereto over which the said Board of Harbor Commissioners has been given jurisdiction, possession, and control are generally set forth in section 2524 of said code. [2] With relation to the powers and limitations of said Board in respect to the occupation and use by others of space or premises within or upon any portion of the property with which said Board is thus vested with possession and control said section provides that "The commissioners shall not have the right to renew any lease, or to lease any premises under their control for any purpose whatever, except as otherwise specially provided, but they may permit any property under their control to be used by any corporation, firm, association, person or company, but in no case shall any corporation, firm, association, person or company enjoy the use of any of the property under the commissioners' charge except such use as shall be terminated as herein provided." By a later clause in said section it is provided that "Any use permitted of the property by the commissioners may be terminated at any time by them on thirty days previous notice to the party or parties so using the same." [3] On January 2, 1919, the Board of Harbor Commissioners adopted a resolution assigning to

the plaintiff herein that certain space at the north end of the Ferry Building designated in his complaint herein, for use by him as a bootblack-stand, such use of said space to continue during the pleasure of the said Board of Harbor Commissioners, at a fixed rental of $75 per month, payable in advance. On January 3, 1919, the said plaintiff was given formal notice in writing of said resolution and of the assignment thereby of said space to him, wherein it was expressly stated that said assignment was ''to continue during the pleasure of the Commission''; and on the same date the said plaintiff, pursuant to said assignment and to said notice thereof and of the terms thereof, entered into the use and occupation of said space in said building thus assigned to him. In so doing he did so with actual knowledge of the limitations imposed upon his tenure of said premises by the terms of said resolution and notice, and also with actual or imputed knowledge of the terms of said section of the Political Code above quoted, limiting the power of said Commissioners to permit the use and occupation of any portion of the properties under their control for a greater tenure than that terminable upon thirty days' notice. Whatever improvements or appliances the plaintiff might have placed upon the space or premises thus allotted to him at the time of said assignment in order to facilitate the doing of his particular business thereon; and whatever improvements, appliances or structures he may have subsequently placed thereon, at whatever cost, and whether with or without the permission of said Board of Harbor Commissioners, were so placed and used with knowledge on his part at all times of the uncertainties of his tenure of said premises both by the terms of his assignment and by the provisions of the code section; and hence no additional right to a greater permanency of tenure could be predicated thereon; and this would be true even though the plaintiff might have been led to expect from the circumstances attending the making of any such improvements or from the terms of the permission accorded him so to do by a complaisant board that his tenure had been made more certain, since by no action or nonaction or permission or express or implied extension on the part of said Board could plaintiff's tenure of said premises be changed or enlarged beyond that of a tenure ter-

minable upon thirty days' notice at the pleasure of the
Board; and this for the reason that the provisions of the
Political Code above quoted expressly define the measure of
the powers of the Board in respect to the use and occu-
pancy of such property and expressly limit the mode of the
exercise of their powers in that regard.  What the Commis-
sioners could not do directly they could not do indirectly
because of these express limitations upon their powers.
[4]  They could not, therefore, create an estoppel which
would have the effect of enlarging the plaintiff's tenure
beyond that embraced within the express limitations of the
code section.  (*Zottman* v. *City and County of San Fran-
cisco,* 20 Cal. 96 [81 Am. Dec. 96] ; *San Diego W. Co.* v.
*City of San Diego,* 59 Cal. 517; *Sutro* v. *Pettit,* 74 Cal. 332,
337 [5 Am. St. Rep. 442, 16 Pac. 7] ; *Santa Cruz R. & P.
Co.* v. *Broderick,* 113 Cal. 628 [45 Pac. 863] ; Dillon on
Municipal Corporations, 5th ed., sec. 791; *Simons Brick
Co.* v. *City of Los Angeles,* 182 Cal. 230 [187 Pac. 1066],
and cases cited.)  The cases referred to by the respondent
in support of his contention that such estoppel might arise
from the conduct of public officials with regard to the occu-
pancy of public property are found upon examination to be
in each instance a case wherein the estoppel permitted by
the courts was such as lay as to its extent within the scope
of the original powers of the Board or official acquiescing in
the extended use or term of occupation.  This is well illustrated
by the case of *Gushee* v. *City of New York,* 42 App. Div. 37
[58 N. Y. Supp. 967], upon which the respondent herein
strongly relies, and wherein the park commissioners of said
city had power to grant privileges for selling refreshments
within the parks thereof for the period of five years, and
having granted such a privilege and having permitted the
grantee to make certain expenditures for repairs and im-
provements upon the premises, were held to be estopped
from withdrawing the granted privilege within such term.
We are cited to no case wherein officials in charge of the
administration of public property, with limited powers as
to the extent of their right to permit the occupation and use
thereof by private persons, could by any agreement or ac-
quiescence or act or conduct upon their part enlarge such
use or occupation to an extent exceeding the express limita-

tions upon their original power to permit such occupation
and use. It is, however, contended by the respondent herein
that notwithstanding the express limitations upon his tenure
of the premises in question expressed in the terms of his
assignment to the effect that "said assignment was to con-
tinue during the pleasure of the Commission"; and not-
withstanding the express provision in the code section that
"any use permitted of the property by the Commissioners
may be terminated at any time by them on thirty days'
previous notice to the party or parties so using the same,"
he is entitled to enjoin the attempted exercise of these
powers on the part of the Commissioners because, as he con-
tends, the action of said Commissioners was not undertaken
in the public interest or in good faith. The general subject
of the powers of this particular Board of Harbor Com-
missioners with respect to their control of the use and occu-
pation of the properties committed to their custody and
management as an agency of the state was exhaustively
considered by this court in the case of *Union Transp. Co.* v.
*Bassett,* 118 Cal. 604 [50 Pac. 754]. That was a case
wherein the plaintiff, as the owner of a steamboat plying
between the cities of San Francisco and Stockton, and as-
signed to docking space at the Clay Street wharf in the
former city, objected to the action of the Board of Harbor
Commissioners in making an order changing the place of
landing to another location, and undertook to obtain an
injunction preventing such action upon the ground that the
same was unreasonable, arbitrary, oppressive, and would
have the effect of ruining the business of the plaintiff in that
action. The trial court granted such injunction. In re-
versing its judgment in that regard this court had under
consideration the provisions of sections 2522 and 2524 of
the Political Code defining the powers of the Board of
Harbor Commissioners; and while the particular portions
of the latter section of the code involved on this appeal were
not therein considered, other portions thereof investing the
Board with similar powers and with a like discretion in
their exercise were under review. [5] This court held
that the large discretion with which the Board of Harbor
Commissioners was invested under section 2524 of the Po-
litical Code was a discretion with which, if it be honestly
exercised, a court of equity will not feel itself at liberty

to interfere, or to substitute its judgment for that of the Board, even if the conclusion of the latter should be erroneous and work hardship upon the individual. The court quoted approvingly the language of the supreme court of Connecticut in the case of *Daily* v. *New Haven,* 60 Conn. 314 [14 L. R. A. 69, 22 Atl. 945], to the effect that whenever bodies or boards of the character of this one are acting within the limits of powers conferred on them and in due form of law the right of courts to supervise, review or restrain is exceedingly limited; and that with the exercise of discretionary powers courts rarely, and only for grave reasons, interfere. Those grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law enter into or characterize the result; and this court proceeds to say: "But, while courts of equity will not refuse to interfere in proper cases, the showing to justify their interference must be clear. The mere difference of opinion between the chancellor upon the one hand, and the board upon the other, will not suffice. It is not to be expected that power will always be exercised with the highest discretion, and even in those cases where upon the showing the court would without hesitation declare that, occupying the position of the board, it would not have made the order or passed the ordinance in question, still this reason will not be considered sufficient to justify the substitution by the court of its judgment for that of the tribunal in which the law has seen fit to lodge the power. (*White* v. *Kent,* 11 Ohio St. 553; *Wiley* v. *Alleghany County Commrs.,* 51 Md. 404; *St. Louis* v. *Weber,* 44 Mo. 550; *Knoxville* v. *Bird,* 12 Lea (Tenn.), 121 [47 Am. Rep. 326].)" It is to be noted that the provisions of section 2524 under review in the instant case, and having special reference to the occupancy and use of property under the control of the Board of Harbor Commissioners, give to said Board in one direction a narrower and in another a broader range of power than was given to said Board under the provisions in said section interpreted in the foregoing case. With respect to the grant of privileges such as that given to the plaintiff herein the Commissioners are expressly forbidden to grant any lease of any portion of the premises under their control, or any use or occupation thereof other than that terminable by them upon thirty days' notice. This

provision commits to the Commissioners the power to give or withhold such notice at their pleasure and invests them with an unlimited discretion in the exercise of such power in so far as the language of the section is concerned; and when to the broad language of the statute there is added the express limitation embraced in the plaintiff's assignment of the space or premises in question, to the effect that his use of the same was to continue ''during the pleasure of the Commission,'' an even stronger case is presented for the noninterference of the courts with the acts of the Commissioners within the scope of their powers than that presented to the court in the above-cited case. Where subordinate boards or officials have been invested with the power of removal of their appointees ''at the pleasure'' of the appointing power the courts have held that ''these words have a well defined legal meaning.'' The right to remove ''at pleasure is an entirely different thing from the right to remove for cause. To hold that the statute only authorizes the council to remove for cause would be to deny to the words used by the legislature their ordinary meaning. This cannot be done.'' (*London* v. *City of Franklin,* 118 Ky. 105 [80 S. W. 514].) In the case of *Stebbins* v. *Police Commission,* 196 Mass. 365 [82 N. E. 42], where the city charter of Springfield provided that the administration of the police department should be vested in the mayor and aldermen, who should have full and exclusive power to appoint a constable and assistants and all other police officers and to remove the same at pleasure, the supreme court of Massachusetts held that under such a provision the mayor and aldermen had an absolute power to remove such appointive officers without any notice or hearing.

[6] But even if it were to be conceded that the broad powers with which the Board of Harbor Commissioners are thus invested, when exercised apparently within the scope and terms of the aforesaid provisions of the Political Code, are nevertheless subject to be reviewed by the courts and their exercise enjoined upon a showing of fraud, corruption and the like, it seems apparent to us from the record before us that no such showing has been made in this case as would have sufficed to justify the action of the trial court in the rendition of the judgment here under review. As we have already seen, the plaintiff could predicate no right to

an extension of his tenure of the space or premises in ques-
tion upon the fact that he had made certain expenditures
thereon with or without the acquiescence of said Board.
Neither, it is plain, could the plaintiff gain a right to a
longer or less terminable period of enjoyment and use of
said premises predicated upon the fact that he had con-
ducted his business thereon carefully, reputably and with-
out cause for complaint; since, if that course of conduct
were to be considered as a sufficient ground for invoking
the restraints of equity against his removal, every other
holder of an assignment of space or premises within the
Ferry Building or the other buildings or properties under
the control of the Board of Harbor Commissioners, would
be entitled, upon a like showing, to an indefinite and inter-
minable right to retain their holdings therein during good
behavior, notwithstanding the express limitations of the
statute in that regard.  And if this plaintiff can predicate
no such right upon such a showing, it would seem irresistibly
to follow that he cannot, upon a like showing, predicate a
charge of fraud or corruption or bad faith or improper mo-
tives, or disregard of duty, or abuse of power, or violation
of law against the Board of Harbor Commissioners for
doing that which it lay within their discretion to do under
the express language and limitations of the statute, not-
withstanding plaintiff's unimpeachable conduct of his busi-
ness upon the premises in question; and it further follows
that, whatever findings the trial court may have made as to
the plaintiff's conduct of his business upon the space or
premises in question, or whatever conclusions of law it may
have predicated thereon, furnish no sufficient ground for
interference by way of injunction with the discretion of the
Board of Harbor Commissioners in the exercise of their
statutory powers.  A like conclusion must be arrived at
with respect to the findings and conclusions of the trial
court to the effect that the best interests of the public would
not be subserved by the action of the Board of Harbor Com-
missioners in revoking the assignment of the plaintiff to the
space or premises occupied by him in the Ferry Building.
[7]  The public, as such, have no interest in the occupancy
of any portion of the Ferry Building by any particular
individual, and hence the continued occupancy or use of the
space or premises in said building heretofore occupied and

used by this particular plaintiff is a matter of no such public concern as would justify the interposition of a court of equity on his application. Neither is it a matter of public concern of which the courts can take cognizance as to whether a bootblack-stand, or a tobacco-stand, or a fruit-stand, or a newspaper and magazine counter, or a confectionery-stand, or in fact any other particular concession, shall or shall not be accorded space and especially shall or shall not be assigned to any particular or designated space in said building or in any other of the buildings or structures under the control of the Board of Harbor Commissioners. These are matters which are committed entirely and exclusively to the judgment and discretion of the Commissioners and over which the courts can exercise no control. It follows that the findings and conclusions of law and judgment of the trial court in respect to these matters constitute an unwarranted interference with the discretionary powers with which the Board of Harbor Commissioners is invested by the provisions of the Political Code above referred to, which this court finds itself unable and unwilling to approve. [8] We are thus brought to the final contention upon which the respondent seeks to sustain the judgment' herein. It is that the Board of Harbor Commissioners was moved by improper motives in its attempted termination of the plaintiff's occupation and use of the space and premises affected by its said order. An examination of the record herein shows it to be entirely wanting in any evidence, with one exception, to be presently noted, sufficient to sustain either the plaintiff's averments or the findings of the trial court in that regard. The single exception is that testified to by the plaintiff and referred to in the findings of the court and which consists in the following remark alleged and found to have been made by one of the Commissioners to the plaintiff: "Well, Taylor, you ought to know the reason; you got it through politics and you are losing it through politics." It should require no argument to show that an apparently flippant remark of this character, made by one of the commissioners, could have no binding effect upon a board of commissioners, the powers of which and the mode and method of their exercise are strictly limited and defined by the statute under which such board is functioning.

It follows from the foregoing considerations that the findings and judgment of the trial court have no sufficient support in the evidence in this case or in the law applicable thereto.

The judgment is reversed.

Seawell, J., Lennon, J., Lawlor, J., Myers, C. J., and Waste, J., concurred.

Rehearing denied.