[Civ. No. 1441. Fourth Appellate District.—April 24, 1933.]

BERTHA BRINEY, Respondent, v. SANTA ANA HIGH SCHOOL DISTRICT et al., Appellants.

Harvey & Harvey for Appellants.

R. Y. Williams, Chas. D. Swanner and Briney & Eckdale for Respondent.

MARKS, J.—Respondent filed her petition seeking an order ''directing said respondents by a peremptory writ of mandate to recognize said petitioner as a permanent teacher in said school district from the commencement of the school term in September, 1932, and that she be paid the salary to which she is entitled from said date, and be allowed to teach in said high school district as a permanent teacher in said high school district''. After a trial in which the material facts at issue were stipulated, a judgment was entered directing the issuance of the peremptory writ of mandate, as prayed for. The judgment contained a direction to appellants to pay to respondent the sum of $2,300 as salary for the school year, 1932–33.

It was stipulated at the trial that respondent was successfully employed by appellants as a teacher of the Santa Ana High School District for the two school years, 1929–30 and 1930–31. A third contract was entered into for the school year 1931–32, during which time she successfully taught in the appellant school. Her first contract was tendered her on June 18, 1929, wherein she was offered a salary of $2,100 a year and in which she was not classified as a substitute, probationary, or permanent employee. Her second contract was tendered her on May 7, 1930, at a salary of $2,200 a year. She was therein classified as a probationary employee. The third contract was tendered her on May 11, 1931, as teacher at a salary of $2,300. This contract contained the following: ''You have been classified by this board as a permanent employee.'' These contracts were all filed with the superintendent of schools of Orange County and among the records of the appellant school board and duplicates were delivered to respondent. Under date of April 27, 1932, she was notified in writing that the appellant board of education had passed a resolution releasing her from service at the expiration of her then contract. The reason given was that, ''This action is occasioned because of the pressing need to reduce personnel in the interest of economy and tax reduction, and also because the board is loathe to place any teacher on permanent tenure at this time.''

But two questions are presented on this appeal: First, was respondent classified as a permanent employee under the provisions of her contract with the board of education made in May, 1931, and, second, could the lower court order the payment of her salary during the school year 1932–33?

Section 5.500 of the School Code, as adopted in 1929 and in effect prior to August, 1931, provided as follows: ''Boards of school trustees, and city, and city and county boards of education shall have power and it shall be their duty to classify as permanent employees all persons, except those hereinafter specified, who shall have been successfully employed by the district for two or three complete consecutive school years in positions requiring certification qualifications.'' This section was amended in 1931 requiring the probationary teacher to serve ''for three complete consecutive school years'' before being classified as a

permanent employee, the amendment becoming effective in August, 1931. Under the authority of *Owens* v. *Board of Education,* 68 Cal. App. 403 [229 Pac. 881], we have concluded that the provisions of section 5.500 of the School Code, adopted in 1929 govern in this case. While the question was not directly considered in the Owens case, the conclusion there reached could not have been arrived at unless the court were of a like opinion concerning the amendment to section 1609 of the Political Code, there under consideration.

It is admitted that the board of education at no time during the employment of respondent took any formal action to classify her other than by the execution of her contracts. It is apparent that the same condition existed as to the classification of other teachers in the appellant high school district during the same period. Under this state of facts, respondent having accepted her contract, rendered her services for the year in question, and having been paid her compensation by the school district after the contract had been filed with the superintendent of schools in Orange County and among the records of the district, and wherein it was stated that she was classified as a permanent employee, is the district estopped from now denying that she was classified as a permanent employee? We think the answer to this question must be in the affirmative.

Section 5.500 of the School Code, as adopted in 1929, provided that the classification by the board of education might be made at the end of either two or three years' successful service as a probationary employee. Respondent had successfully completed her two years of probationary service. It was then within the power of appellants to give her the classification of a permanent employee at that time.

Respondent relies upon section 1962 of the Code of Civil Procedure, section 1635 of the Civil Code, *McCormick Lumber Co.* v. *Highland School Dist.,* 26 Cal. App. 641 [147 Pac. 1183, 1184], *Brown* v. *Town of Sebastopol,* 153 Cal. 704 [96 Pac. 363, 19 L. R. A. (N. S.) 178], and *Sacramento* v. *Southern Pac. Co.,* 127 Cal. 217 [59 Pac. 568, 825], as upholding the doctrine of estoppel.

In *McCormick Lumber Co.* v. *Highland School Dist., supra,* it was said: "The question presented is as to whether,

admitting the informalities of notice in the calling of the meeting and advertising for bids for the construction of the building, the school district, having received and appropriated the benefit of the labor and materials supplied by the contractor, is estopped from maintaining a defense based upon the irregularities noted. We think, under the circumstances of this case, the contractor, or his assignee, was entitled to recover. Substantially, the authorities indicate no different rule in applying the doctrine of estoppel to the acts of individuals or private corporations, than is proper to be applied to the acts of municipal corporations. There is, however, a distinction suggested and it is this: That where the contract or agreement upon which recovery is sought is one wholly without the scope of the power of the municipality to make—in other words, is *ultra vires*— then there can be no estoppel; but where the authority exists to make the contract, but the proceedings precedent thereto have been informally taken only, then the rule of estoppel may be made to operate against a municipality as completely as it would against an individual under the same circumstances.'' The authorities just cited furnish ample ground for our upholding the contention of respondent under the doctrine of estoppel.

Appellants rely upon the cases of *Zottman* v. *San Francisco,* 20 Cal. 96 [81 Am. Dec. 96], and *Taylor* v. *Spear,* 196 Cal. 709 [238 Pac. 1038], in support of their theory that the doctrine of estoppel cannot be applied to the facts of this case. The two cases just cited are easily distinguishable from the instant case. In the Zottman and Taylor cases the municipal authorities had no power to make the contracts concerning which the estoppel was urged. These cases held that estoppel could not be invoked where the original contract was beyond the power of a municipality to make, or was contrary to law. In the instant case, as we have already remarked, the appellant board of education had the express power and authority to classify respondent before the close of the school year 1931–32.

■ The next question to which we must direct our attention is whether or not the lower court should have ordered appellants to pay respondent $2,300, the amount of her salary for the preceding school year.

Section 18 of article XI of the Constitution prohibits any board of education or school district from incurring any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year. It is admitted that this question was not raised by either party in the court below and nothing appears in the record to indicate whether the order directing appellants to pay the sum of $2,300 will cause them to make an expenditure in excess of the income and revenue provided for the fiscal year 1932–33.

This section of the Constitution has been frequently construed by the courts and its application cannot now be doubted. The effect of these decisions has been clearly summarized as follows: "The provision means, . . . that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income and revenue of any future year." (18 Cal. Jur. 880.) "A claim which is valid when the indebtedness is incurred does not become bad by reason of the subsequent exhaustion of funds from which it can be paid before the claimant is able to obtain formal allowance and payment; and while his remedy to obtain payment is affected, the claimant is nevertheless entitled to have his claim established by a judgment for the amount due. He is entitled to a general judgment, though by reason of the constitutional provision, the judgment may not be paid out of the revenues of a fiscal year other than the one in which the liability or indebtedness was created, even though taxes have been levied in a subsequent year for the express purpose of paying it." (18 Cal. Jur. 887. See, also, *Kennedy* v. *City of Gustine*, 210 Cal. 18 [290 Pac. 38].)

Had respondent recovered an ordinary judgment for her annual salary, and were such case here on appeal, with the pleadings and evidence silent on the question of whether or not the judgment could be paid out of the income and revenue provided for the high school district for that fiscal year, we would be compelled to affirm the judgment under the authority of the cases cited in the notes to the foregoing quotations from California Jurisprudence. The question of the sufficiency of the income and revenue to pay the judgment could be determined at the time the

plaintiff sought to collect it. (*Buck* v. *City of Eureka,* 119 Cal. 44 [50 Pac. 1065].)

In the instant case, if we affirm the judgment in its entirety, we are required to go further than merely to affirm a judgment for money against the school district. We would have to approve a peremptory order requiring the district to pay out of its funds $2,300, without knowing whether such funds were available for such purpose. By so doing we might be affirming a portion of a judgment which might require appellants to perform an unconstitutional act. We should not be expected to do this. A peremptory writ of mandate should only require the performance of an act within the law, where the duty and legal ability to perform appear.

In *Martin* v. *Fisher,* 108 Cal. App. 34 [291 Pac. 276, 278], it was said: "To hold that the obligation to pay the demand of respondent does not come within the provisions of section 18 of article XI of the Constitution, we would have to conclude that the statutory right to be classified as a permanent teacher, and paid as such, existed under the provisions of the Political Code regardless of the provisions of the Constitution. This section of the Political Code provides three occasions for the dismissal of a permanent teacher. The first is upon charges brought, and after a hearing, and upon any of the grounds specified. The second is upon the decrease of the number of the pupils attending the schools of the district, so that the dismissal of the teacher becomes necessary. The third is upon the discontinuance of a course of instruction in which the teacher is engaged. To these statutory grounds of dismissal we conclude that the Constitution adds another, namely, lack of available revenue during a fiscal year to pay the salary of a teacher. A school district may suffer a loss of revenue just as it may suffer a loss in the number of children attending its schools. The legislature in adopting section 1609 of the Political Code could not have intended to attempt to make school districts retain and pay teachers when funds were not available for the district so to do. To so hold would be to defeat the very purpose of the framers of the section of the Constitution we are considering, and return to the conditions existing before its adoption, which conditions it was intended to prevent. . . . We

must conclude that the legislature adopted section 1609 of the Political Code with the provisions of section 18 of article XI of the Constitution in mind. The provisions of the code section are limited by those of the Constitution."

Respondent has cited us to cases where a peremptory writ of mandate was ordered to issue directing the reinstatement of the teacher and the payment of her salary. (*Goldsmith* v. *Board of Education,* 63 Cal. App. 141 [218 Pac. 296]; *Anderson* v. *Scranton,* 111 Cal. App. 322 [295 Pac. 544]; *Morris* v. *Board of Education,* 119 Cal. App. 750 [7 Pac. (2d) 364]; *Saxton* v. *Board of Education,* 206 Cal. 758 [276 Pac. 998].) In none of these cases was the question we are considering presented to or passed upon by the court. In the case of *Goldsmith* v. *Board of Education, supra,* the superintendent of the Sacramento city high school district was ordered suspended without pay from September 22 to November 30, 1922. He sought a writ of mandate directing his reinstatement and the payment of his salary during the time of the suspension. Judgment went against him and he appealed. The opinion was written on a motion to dismiss the appeal and what was said by the District Court of Appeal was not on the merits of the cause, but argument showing how the school superintendent might benefit if the judgment were recovered and he should prevail upon a second trial. None of these cases are direct authority against the position we are here taking.

It is ordered that the following be stricken from the second paragraph of the judgment: "And that respondents pay her out of the funds of such district the salary to which she is entitled as a permanent teacher in said district from the commencement of the school term on September 12th, 1932, on a basis of the same annual salary which petitioner received under her contract with said district for the school year 1931–32, of $2,300.00, payable in ten equal payments at the beginning of each calendar month, at the rate of $230.00 per month, the first payment to cover the payment due and payable on October 3rd, 1932", and in lieu thereof the following be substituted: "Such employment to be at a salary of $2,300.00 per year for the school year 1932–33."

As so modified, the judgment is affirmed. Each party will pay his own costs of appeal.

Barnard, P. J., and Jennings, J., concurred.