[Civ. No. 11297.   Second Appellate District, Division Two.—April 16, 1937.]

HARRY HUSTON CRAWFORD, Appellant, v. BOARD OF EDUCATION OF THE CITY OF GLENDALE et al., Respondents.

Tanner, Odell & Taft and Robert A. Odell for Appellant.

Everett W. Mattoon, County Counsel, and W. B. McKesson and S. V. O. Prichard, Deputies County Counsel, for Respondents.

THE COURT.—Plaintiff filed his petition in the superior court seeking to compel the Board of Education of the City of Glendale to reinstate him as a teacher in the Glendale Junior College district and to compel the issuance of warrants for unpaid instalments of his salary. From a judgment in favor of defendants he prosecutes this appeal.

Plaintiff was employed as a teacher in the Glendale Junior College district, which has an average daily attendance of less than 850, for the school years 1929–1930 and was by the Board of Education classified as and became a probationary teacher. He served as such for three consecutive years. At the beginning of the fourth year, June 17, 1932, the board sent to him a form of contract in which it was stated that upon his acceptance thereof he would be classified by the board as a permanent teacher. Upon this contract, which was on a printed form, was a typewritten statement to the effect that it was a contract for "one-third time services only". Plaintiff signed a written acceptance of this

contract and returned it to the board. On September 20, 1932, the board sent a similar contract to plaintiff except that there was a typewritten statement to the effect that it was for "one-half time services only". This contract also specified that upon plaintiff's acceptance thereof he would be classified as a permanent teacher. Plaintiff also signed a written acceptance of this contract and returned it to the board. During the fourth year plaintiff rendered half-time services and at the beginning of the fifth year, on September 12, 1933, the board sent plaintiff a contract for the ensuing year in which it was stated that upon his acceptance of the contract he would be classified as a permanent teacher. On this contract there was typed the statement that it was for "one-fourth time services only". Plaintiff signed a written acceptance of this contract and returned it to the board with a letter in the following language: "I am herewith returning my contract, properly executed by myself, accepting employment in the Glendale Junior College District, as a permanent Teacher. In order that there may be no misunderstanding about the matter, I wish to state that I hold myself in readiness to teach any number of classes in Aeronautics or any other subject offered at Glendale Junior College (I hold a general secondary credential), up to a full time loan in the Glendale Junior College. It is my understanding that by teaching part time in Aeronautics only, that I in no way surrender my status as a permanent teacher in the Glendale Junior College." During plaintiff's first probationary year he taught mathematics, orientation, physics and aviation. During the second and third years he taught mathematics, orientation and aviation. During the fourth year he taught mathematics, orientation and aviation, but certain of his classes in mathematics and orientation were given to other teachers. During the fifth year he was restricted to aviation. During all of the fourth and fifth years there were employed in the district involved a number of probationary teachers some of whom were teaching subjects which plaintiff was certificated to teach. There has been no decrease in the enrollment or attendance of pupils in the district. No charges have been preferred against plaintiff. During all the years involved plaintiff has been duly certificated and qualified to teach all of the subjects offered in the school of the district. At the end of the fifth year plaintiff was notified that his services would not be required for the ensuing school year.

The rights of plaintiff are governed by section 5.501 of the School Code: "Every employee of a school district of any type or class, having an average daily attendance of less than 850 pupils, who, after having been employed by the district for three complete consecutive school years in a position, or positions, requiring certification qualifications and is reelected for the next succeeding school year to a position requiring certification qualifications, may be classified by the governing board of the district as a permanent employee of the district. If said classification be not made the employee shall not attain permanent status and may be reelected from year to year thereafter without becoming a permanent employee until said classification is made." It is conceded that plaintiff was employed by the district for three consecutive years in a position requiring certification qualifications. ■ Defendants deny that plaintiff was reelected and that he was classified by the governing board of the district as a permanent employee. We have concluded that the evidence requires the conclusion that neither of these denials can be upheld.

The board had the power to discharge plaintiff before May 15, 1932. Probationary teachers are deemed reelected in the absence of action by the board to discharge them from the employment. In section 5.401 of the School Code it is provided: "Persons in positions requiring certification qualifications may be elected for the next ensuing school year on or after the first meeting of the governing board of the district as reorganized on the first day of May, and each person so elected shall be deemed reelected from year to year except as hereinafter provided." At its meeting of May 10, 1932, the board took action directing that certain probationary teachers be discharged before May 15, 1932. The list of those to be discharged did not include the name of plaintiff. The minutes of the board show the following in reference to plaintiff: "Reduction in time: Dr. H. H. Crawford, mathematics, aviation and orientation. Reduction of time from full time to one-third time." Plaintiff was not notified prior to May 15, 1932, that his services would not be required for the ensuing year. In the minutes of the board the following also appears: "All certificated employees from the . . . Glendale Junior College District, with the exceptions as indicated above [not including plaintiff] and with the exception of proba-

tionary teachers notified on or before May 15, 1932, that their services would not be required during the year 1932–33, be reelected for the school year 1932–33. Salaries to be according to the regular schedules with the cut applied as outlined above. Assignments to be made at a later date, and that the Superintendent be instructed to proceed with the preparation of contracts." It is evident that plaintiff was not only reelected automatically but that the board by affirmative action declared him to be reelected for the ensuing school year. The fact that plaintiff's time was reduced does not efface the affirmative action of the board by which he was actually reelected. It follows from the reelection of plaintiff that the board had the power to classify him as a permanent employee of the district.

■ It is argued by defendants that the board took no formal action to bring about plaintiff's classification as a permanent employee. It is apparent from the record that the board was attempting to bring about economies in the administration of school affairs. At the meeting of the board at which there was presented "the report of the committee of costs and budgetary economies" the following appears in the minutes: "After detailed discussion, with appreciation for the attitude of the teachers in their generous offer to the Board to take a reduction in salary in lieu of discharging their fellow teachers, and for the protection of the Board, it was moved by Mr. Davidson, seconded by Mr. Hibben, that the following recommendations be approved, the superintendent being instructed to notify the probationary teachers being dropped before May 15, and indicate to them the regret of the Board in having to take this step and the possibility of reinstatement where vacancies might occur." Then follow the names of the teachers to be dropped, and the notation as to plaintiff hereinabove set forth. During the month of June next succeeding a contract was sent to plaintiff signed by the president and secretary of the board, both members thereof, in which it was stated that plaintiff upon his acceptance of the contract would be classified as a permanent employee. In the following September a similar contract was sent to plaintiff providing for one-half time services. For two years plaintiff rendered services under such contracts. Under such circumstances the court must uphold plaintiff's contention that the board is estopped to deny that he has

been permanently classified. The question involved was decided in *Briney* v. *Santa Ana High School. Dist.*, 131 Cal. App. 357 [21 Pac. (2d) 610]. In that case Miss Briney had taught the requisite period and the board had the power to classify her as a permanent employee but took no formal action to do so. She was tendered a contract in which it was stated that she had been classified by the board as a permanent employee. She rendered services and thereafter was notified by the board that her services would not be continued for the reason that there was "present need to reduce personnel in the interest of economy and tax reduction". In upholding her right to permanent tenure the court said: "It is admitted that the board of education at no time during the employment of respondent took any formal action to classify her other than by the execution of her contracts. . . . Under this state of facts, respondent having accepted her contract, rendered her services for the year in question, and having been paid her compensation by the school district after the contract had been filed with the superintendent of schools in Orange County and among the records of the district, and wherein it was stated that she was classified as a permanent employee, is the district estopped from now denying that she was classified as a permanent employee? We think the answer to this question must be in the affirmative." In the Briney case classification was optional with the board of education and it was optional in the present case. The reasons for the application of the doctrine of estoppel in the Briney case are present in the case now before us. In *Barnhardt* v. *Gray*, 15 Cal. App. (2d) 307 [59 Pac. (2d) 454], the court in referring to the Briney case said: "As stated in the opinion it was within the power of appellants to give the petitioner the classification of a permanent employee at the time the contract was issued and delivered to her. No formal action of the board of trustees was held to be further necessary. The issuance of the contract, at a time when the board had power so to do, and delivering same to petitioner was of the same force and effect as though formal action had been taken, and estopped the board from denying that petitioner had been so classified." Petitioner cooperated with the board in its endeavor to effect economies. In doing so he relied upon the statement in the contract signed by the spokesman for the board and the officers thereof

that his tenure would be permanent. In providing for permanent employment of teachers the legislature did not contemplate giving the governing boards authority to discharge permanent teachers by reducing the time of their employment to such brief periods as would be equivalent to dismissal, while at the same time permitting the employment of teachers not having a permanent status. Under the circumstances shown equity should and will preserve plaintiff's rights. Since plaintiff is relying upon the doctrine of estoppel and has agreed to a contract for one-fourth time services he must be held to have acquired a permanent status for one-fourth time.

The judgment is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 7, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 14, 1937.