[Sac. No. 5628. In Bank. Jan. 31, 1944.]

JAMES P. FARRELL et al., Appellants, v. COUNTY OF PLACER et al., Respondents.

Morris, Jaffa & Sumski and Barnett Sumski for Appellants.

Lowell L. Sparks, District Attorney (Placer), Loyd E. Hewitt, District Attorney (Sutter), Charles V. Barfield, Thomas F. Sargent and John J. Healy, Jr., for Respondents.

J. H. O'Connor, County Counsel (Los Angeles), S. V. O. Prichard, Assistant County Counsel, A. Curtis Smith, Deputy County Counsel, Earl Redwine, County Counsel (Riverside), Walter C. Haight, District Attorney (Tulare), Leroy McCormick, Deputy District Attorney, John Quincy Brown, District Attorney (Sacramento), William A. Green, Assistant District Attorney, M. Arthur Waite, District Attorney (Ventura), Chester Watson, District Attorney (San Joaquin), Clyde Larimer, District Attorney (Glenn), A. H. Ludiman, District Attorney (Tehama), Hudson Ford, District Attorney (Colusa), Edwin J. Regan, District Attorney (Trinity), Jeremiah R. Scott, District Attorney (Humboldt), Burt W. Busch, District Attorney (Lake), Chas. E. Johnson, District Attorney

(Siskiyou), Joseph Heenan, District Attorney (Yuba) and John L. Childs, District Attorney (Del Norte), as Amici Curiae on behalf of Respondents.

CARTER, J.—Plaintiffs commenced this action against defendants county of Placer and county of Sutter to recover damages arising out of an automobile accident allegedly caused by the dangerous and defective condition of a bridge and the approaches thereto maintained by defendants. A judgment of dismissal was entered after defendants' demurrers were sustained.

The action is based upon the public liability statute imposing liability upon counties for injury to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, works and property. (Stats. 1923, p. 675; Deering's Gen. Laws, 1937, Act 5619.) Defendants invoke a claim statute (Stats. 1931, p. 2475; Deering's Gen. Laws, 1937, Act 5149) which provides that when any person has been injured or property damaged as the result of the dangerous or defective condition of any of the above mentioned public property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the board of supervisors "within ninety days" after the accident has occurred. The claim must specify the name and address of the claimant, the date and place of the accident and the extent of the damages or injuries. Compliance with that claim statute is mandatory. (9 Cal. Jur. Ten-year Supp., Pub. Off., sec. 190.)

Although it is alleged in the complaint that plaintiffs filed a claim with the defendant counties in the manner required by law, it is conceded that no formal verified claim was presented until after the expiration of the ninety-day period but before the commencement of the action. The claim was rejected expressly by one defendant and by the other by lapse of time coupled with a failure to act.

In asserting that their action is not barred by the claim statute plaintiffs rely upon the following circumstances: The accident occurred on May 31, 1938. As a result of the personal injuries received by plaintiff Lena Farrell in the accident, she was confined to the hospital until the middle of September, 1938, and had not recovered from the injuries at the time the action was commenced on May 27, 1939. On June 13, 1938, thirteen days after the accident, "an agent

of defendants," accompanied by a stenographer, called upon Mrs. Farrell at the hospital and, at the request of the defendants through their agent, Mrs. Farrell made "plaintiffs' claim against defendants . . . for damages resulting from her injuries received . . . and said claim, including the place where the accident occurred, how it occurred, when it occurred, and the nature of the injuries of said plaintiff Lena Farrell and all other matters required and requested by defendants was then and there reported in shorthand by said stenographer. That thereafter, at the same time and place, and after the said stenographer had left the room, said defendants, through their said agent, asked said plaintiff Lena Farrell if she desired to settle the case, and defendants were then advised by said plaintiff that she desired to settle but did not then know what her damages would amount to; that said defendants, through their said agent, then and there advised said plaintiff Lena Farrell not to employ an attorney and represented to said plaintiff that it would be best for her to settle the case with and through said agent directly and that she would in that manner receive a larger net sum herself. That about ten days thereafter [after June 13, 1938], said agent of defendants again called to see said plaintiff Lena Farrell at said Highland Hospital at Auburn, California, and asked said plaintiff if she was then willing to make a settlement. Said plaintiff was at said time in great pain and under opiates, and informed defendants, through their said agent, that she was not then in condition to discuss the matter of the extent of her damages and desired to recover her health before determining and specifying the extent of plaintiffs' damages; that defendants, through their said agent, then and there represented that it would be satisfactory to defendants for plaintiffs to so do; . . . Plaintiffs believed the said representations of defendants made through their agent, . . . and relied thereon and by reason thereof did not for several months after the making thereof, as aforesaid, employ an attorney to recover their damages for injuries against defendants, suffered as aforesaid, and did not take any steps or proceedings whatsoever relating thereto."

■ It has been said generally that a governmental agency may not be estopped by the conduct of its officers or employees (10 Cal.Jur. 650-651), but there are many instances in which an equitable estoppel in fact will run against the government

where justice and right require it. (*City of Los Angeles* v. *Cohn*, 101 Cal. 373 [35 P. 1002]; *Fresno* v. *Fresno C. & I. Co.*, 98 Cal. 179 [32 P. 943]; *Sacramento* v. *Clunie*, 120 Cal. 29 [52 P. 44]; *Brown* v. *Town of Sebastopol*, 153 Cal. 704 [96 P. 363, 19 L.R.A.N.S. 178]; *Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309 [44 P.2d 547]; *Sutro* v. *Pettit*, 74 Cal. 332 [16 P. 7, 5 Am.St.Rep. 442]; *City of Los Angeles* v. *County of Los Angeles*, 9 Cal.2d 624 [72 P.2d 138, 113 A.L.R. 370]; *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432 [73 P. 189]; *County of Los Angeles* v. *Cline*, 185 Cal. 299 [197 P. 67]; *La Societe Francaise* v. *California Emp. Com.*, 56 Cal. App.2d 534 [133 P.2d 47]; *McGee* v. *City of Los Angeles*, 6 Cal.2d 390 [5 P.2d 925]; *Ernst* v. *Tiel*, 51 Cal.App. 747 [197 P. 809]; *People* v. *Gustafson*, 53 Cal.App.2d 230 [127 P.2d 627]; *Hewel* v. *Hogin*, 3 Cal.App. 248 [84 P. 1002].) It has been aptly said: "If we say with Mr. Justice Holmes, 'Men must turn square corners when they deal with the Government', It is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens." (48 Harv.L.Rev. 1299.)

In the instant case the facts clearly establish that defendants should be estopped to complain of the late filing of the claim. *Before* the time for filing the claim had expired, and only about thirteen days after the accident occurred, defendants obtained a full and complete statement from plaintiff Lena Farrell concerning the accident, thus not only enabling them to investigate the accident fully but also having the benefit of Mrs. Farrell's version of it. They advised her not to employ counsel, thus lulling her into a sense of security and persuading her not to avail herself of legal assistance in the protection of her rights. She was told that it would be satisfactory with defendants for her to wait until she knew the extent of her injuries before she stated the amount she claimed or made a settlement. Plaintiffs believed and relied upon those statements and conduct of defendants, and as a result did not consult with counsel or take any proceedings in regard to her claim. It is pertinently said in *Times-Mirror Co.* v. *Superior Court*, *supra*, at page 331: "Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention. 'It has always been the pride of courts of equity that they will so mold and adjust their decrees as to

award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.' (*Humboldt Sav. Bank. v. McCleverty*, 161 Cal. 285 [119 P. 82], citing Story's Equity Jurisprudence, secs. 28, 439; 1 Pomeroy's Equity Jurisprudence, sec. 60.) Commenting upon Lord Hardwicke's statement as to the equitable principles which should govern chancellors (Pomeroy's Equity Jurisprudence, 1, fourth ed., note to section 60), the learned author makes the following observation: '. . . No chancellor was ever more governed in his judicial work by principles—but he would guard against the theory which locks these principles up in the already existing precedents, and limits their free application to facts, circumstances and relations similar to those which had been the subject-matter of former adjudications. In other words, Lord Hardwicke in this short passage states the same view which I had given in the text. Although equity is and long has been in every sense of the word a system, and although it is impossible that any new principles should be added to it, yet the truth stands and always must stand that the final object of equity is to do right and justice.' The principles of equity, continues the same author, are based upon a Divine morality and possess an inherent vitality and a capacity of expansion, so as ever to meet the wants of a progressive civilization."

It has been said in cases involving claim statutes such as here involved that compliance with the requirement of the statute cannot be waived or excused by estoppel. (See *First Tr. & Sav. Bank* v. *City of Pasadena*, 21 Cal.2d 220 [130 P.2d 702]; *Hall* v. *City of Los Angeles*, 19 Cal.2d 198 [120 P.2d 13]; *Douglass* v. *City of Los Angeles*, 5 Cal.2d 123 [53 P.2d 353]; *Cooper* v. *County of Butte*, 17 Cal.App.2d 43 [61 P.2d 516]; *Spencer* v. *City of Calipatria*, 9 Cal.App.2d 267 [49 P.2d 320]; *Johnson* v. *City of Glendale*, 12 Cal.App.2d 389 [55 P.2d 580]; *Chapman* v. *City of Fullerton*, 90 Cal.App. 463 [265 P. 1035]; *Kline* v. *San Francisco U. School District*, 40 Cal.App.2d 174 [104 P.2d 661, 105 P.2d 362].) In the First Trust & Savings Bank case and the Douglass case no claim at all was filed with the proper persons and the factual bases of the claimed estoppel were dissimilar. In the Kline case all that appears is that a letter in regard to the claim was sent to the board of trustees of the school district and some action, the character of which does not appear, was taken thereon by the board. No facts upon which to base an

estoppel appeared. The language therein with respect to waiver and estoppel was not necessary to the decision. The Johnson case involved action by the city officials consisting of an investigation of the facts of the claim and a visit to the claimant in the course of the investigation, at which time the officials told the claimant that they would determine the question of liability and advise the claimant in regard thereto. The court does not discuss the estoppel features of the facts presented, but declares that the officials could not waive the requirement of a timely filing of a claim. However, in view of the facts presented an estoppel did exist and the case must be disapproved. The Spencer case held that no estoppel was available because the claimant had nineteen days within which to file her claim in time *after* she became aware that she could not rely upon the false impression given to her by the officials. The facts in the Hall, Cooper and Chapman cases did not contain the elements necessary for estoppel which exist in the case at bar.

 Although it has been repeatedly held that compliance with the appropriate claim statute is mandatory and an essential requisite to plaintiff's cause of action, nevertheless the time element with respect to the filing of the claim is essentially procedural in nature (*Norton* v. *City of Pomona,* 5 Cal.2d 54 [53 P.2d 952] ; *Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365]) and is analogous to a statute of limitation. (See *Thompson* v. *County of Los Angeles,* 140 Cal.App. 73 [35 P.2d 185] ; *Rhoda* v. *County of Alameda,* 134 Cal.App. 726 [26 P.2d 691].) It has been intimated by some authorities that the claim statute is the measure of the power of the governmental agency in paying the tort claims involved, and hence any deviation from that procedure cannot be dispensed with by waiver, estoppel, or otherwise. That conclusion, at least with respect to the time of filing the claim, is not supported by the statute or reason. The various reasons advanced for the adoption of the claim statute, that is, to afford the agency an opportunity to investigate the merits of the claim, and to arrive at a settlement, thus avoiding litigation, are not inconsistent with the view that the statute is not the measure of the power. From the standpoint of the agency it has general power to pay claims arising from the liability imposed by the public liability act. Hence the filing of the claim within ninety days, while mandatory upon the claimant and a condition precedent to his cause of ac-

tion, is nothing more than a procedural requirement as to the agency, which, as to the claimant, may be excused by estoppel. There are cases where the procedure specified in the statute is manifestly the measure of the power. (See *Miller* v. *McKinnon*, 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570].) There are instances where the procedural steps are not the measure of the power and estoppel may be invoked against a governmental agency from relying upon irregularities therein. (See *Charles R. McCormick L. Co.* v. *Highland S. Dist.*, 26 Cal.App. 641 [147 P. 1183] ; *Clark* v. *Conley School District*, 86 Cal.App. 527 [261 P. 723] ; *Briney* v. *Santa Ana High School Dist.*, 131 Cal.App. 357 [21 P.2d 610].) This court has held that compliance with the claim statute is not jurisdictional with respect to the power of a court to give judgment against the governmental agency where no claim was filed. (*Redlands etc. Sch. Dist.* v. *Superior Court*, 20 Cal. 2d 348 [125 P.2d 490].)

 There is no merit in the contention that there is a misjoinder of parties defendant or that the joint liability of the defendants Placer and Sutter Counties is not sufficiently alleged. The complaint charges that a highway runs along the boundaries of the two counties, being partly in each; that there was a bridge situated on the highway; "That at all times herein mentioned, said wooden bridge and the approaches thereto and said public highway *were maintained by defendants said Sutter County and said Placer County* in a defective and dangerous condition." (Emphasis added.) Those allegations are sufficient to charge joint control and maintenance of the public place where the injury occurred. They are sufficiently certain to show the lawful basis of such joint control, the details of which are peculiarly within the knowledge of defendants. Where two or more persons jointly engage in the commission of a tort they are jointly and severally liable and they may be sued jointly. (20 Cal. Jur. 510.)

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Traynor, J., and Schauer, J., concurred.

Respondents' petition for a rehearing was denied February 28, 1944. Edmonds, J., and Traynor, J., voted for a rehearing.