[Civ. No. 20685.   Second Dist., Div. One.   May 2, 1955.]

KERMIT WOODIE et al., Appellants, v. H. L. BYRAM, as County Tax and License Collector, etc., et al., Respondents.

James C. Webb for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), and Edward H. Gaylord, Deputy County Counsel, for Respondents.

DRAPEAU, J.—In October of 1948, Ernest A. Tefft, doing business as Lawndale Wrecking Company, and one of the owners of the realty at 15310 Hawthorne Boulevard in an unincorporated area of Los Angeles County, established an automobile wrecking business thereon.   At that time the premises were in Zone M-3 where automobile wrecking yards were permitted.   However, said Tefft did not obtain the auto wrecker's license then required by county ordinance No. 431.   At all times herein mentioned, county ordinance No. 2174 required an eight foot fence surrounding such wrecking

yards, but the instant yard was maintained without such fence until after May 24, 1949.

On the latter date, the Board of Supervisors of Los Angeles County enacted ordinance No. 5334, effective June 24, 1949, which amended ordinance No. 1494, so as to place the instant premises in Zone C-3. Section 258 of said ordinance No. 1494 prohibited in Zone C-3 the establishment or maintenance of any junk or auto wrecking yard, except as to existing uses, as provided by section 531 thereof, to wit:

"An exception is granted automatically hereby, so as to permit the continuation of the particular existing uses of . . . any premises existing in the respective zones immediately prior to the time this ordinance, or any amendment thereof becomes effective, if such existing use was not in violation of this or any other ordinance or law . . ."

Thereafter, on September 6, 1949, defendant Byram, as county tax and license collector, issued to said Tefft an auto wrecker's license for the premises in question. ". . . the said Ernest A. Tefft applied for and obtained said auto wrecking license in attornment to orders from the Sheriff . . ." Both said Byram and the sheriff knew that from October 18, 1948, said Tefft had continuously conducted the business at said premises. This license was renewed for the calendar year of 1950.

Also ". . . during the month of August, 1949, and in attornment to orders to do so from the Sheriff . . . petitioners erected completely around said premises and at all times maintained . . . a . . . fence complying in all respects with the provisions of said ordinance No. 2174."

On September 18 or 19, 1950, petitioners Woodie contemplated the purchase of said automobile wrecking business. They inquired of Mr. Camp, an employee of defendant regional planning commission, regarding the zoning of the Hawthorne Boulevard property. He informed them that "from the information available, that the then owner of the property had an automatic exception to conduct an auto-. mobile wrecking business which would go with the land, and Kermit and Roger Woodie would have the same rights if they took the property over."

On September 20, 1950, petitioners Woodie bought the wrecking business for $10,000, and executed a lease of the premises for a five-year period at a rental of $4,200. They also filed and published their certificate of fictitious firm name of Lawndale Wrecking Company.

On that date, and on the subsequent dates of January, 1951, September 24, 1951, and January, 1952, said petitioners Woodie applied to defendant Byram for a license to conduct the business of automobile wrecking on the said premises, offering to pay the required fee. However, defendant Byram refused to issue same, on the ground such business was prohibited at said location by zoning ordinance No. 5334.

Petitioners sought by the instant proceeding in mandate to compel the issuance to them of a license to conduct said auto wrecking business.

At the conclusion of the trial herein, the court found the facts above recited. It also found, among others, that "on October 18, 1948, the registration division of the Department of Motor Vehicles of the State of California issued to Lawndale Wrecking Company automobile wrecker's license No. 6616, with all the rights and privileges pertaining thereto." And on May 3, 1949, the said state agency again issued to said company automobile wrecker's license No. WR 6616 for the year 1949.

From the facts found, the court concluded that on June 24, 1949, when the property was placed in Zone C-3, the use of the premises as an auto wrecking yard was in violation of two other ordinances: No. 431, because no license thereunder had been obtained; and No. 2174, because of lack of the required fencing. Therefore, that the exception provided by section 531 of ordinance No. 1494 was not applicable.

From the judgment which followed, denying a writ of mandate, petitioners Woodie appeal.

Respondents admit (1) that prior to June 24, 1949, the subject property was located in Zone M-3 where auto wrecking yards were permitted; (2) that on that date, the property was placed in Zone C-3 where such business was prohibited, except as provided in section 531 of ordinance No. 1494.

Respondents contend, however, that since the original owners conducted the business in deliberate violation of both the licensing ordinance and the fencing ordinance on the date when ordinance No. 1494 became effective, the continued nonconforming use of the premises is not protected by section 531 thereof.

Appellants urge that respondents are estopped to raise the question of violation of the licensing and fencing ordinances. This for the reason that respondent Byram with knowledge of such violations issued the auto wreckers' licenses for the years 1949 and 1950. Also, that appellants were given as-

surance prior to their investment in the business that they would be able to obtain the necessary licenses to continue it as a nonconforming use.

Neither the petition for the writ of mandate nor the stipulation of facts is included in the record on appeal.

However, the findings of fact reveal that from the day the business was established on October 18, 1948, to the date of its sale to appellants on September 20, 1950, the original owners were licensed to operate it, to wit:

1. Pursuant to auto wrecker's license issued by the State of California, for the balance of the year 1948, and for the year of 1949;

2. Pursuant to auto wrecking license issued by the county of Los Angeles on September 6, 1949, which was renewed for the year 1950.

It was not until the business was sold and the purchasers took possession that a license was denied, on the ground that automobile wrecking was not permitted by zoning ordinance No. 5334.

The findings also reveal that in August of 1949, appellants' predecessors complied with the fencing regulation. And that on September 6, 1949, when the county license was issued, both respondent Byram and the sheriff knew that the business had been operated continuously from October 18, 1948.

From the facts disclosed by the trial court's findings, an inference arises that when appellants paid the purchase price of $10,000 and executed a five-year lease of the property, they did so in reliance on the license issued by respondent Byram on September 6, 1949, and its renewal for the year 1950.

As stated in *Farrell* v. *County of Placer*, 23 Cal.2d 624, 627 [145 P.2d 570, 153 A.L.R. 323]: "It has been said generally that a governmental agency may not be estopped by the conduct of its officers or employees (10 Cal.Jur. 650-651), but there are many instances in which an equitable estoppel in fact will run against the government where justice and right require it. (Citation of authorities.) It has been aptly said: 'If we say with Mr. Justice Holmes, "Men must turn square corners when they deal with the Government," it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' (48 Harv.L.Rev. 1299.)"

In the instant case the facts clearly establish that respondents should be estopped to complain of the so-called vio-

lations of the original owners of the instant business, in order to deprive appellants of the exception granted by section 531 of ordinance No. 1494.

Accordingly, it is concluded that the judgment appealed from is not supported by the findings, because the material findings are in favor of appellants, and the judgment, nevertheless, is against them. (24 Cal.Jur. 999, § 220.)

For the reasons stated, the judgment is reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 23, 1955, and respondents' petition for a hearing by the Supreme Court was denied June 29, 1955. Traynor, J., was of the opinion that the petition should be granted.