[Civ. No. 5205.   Fourth Dist.   Nov. 22, 1955.]

ADRIANE KIRCHMANN, Appellant, v. CITY OF
ANAHEIM, Respondent.

McCabe & Schumacher for Appellant.

Harry E. Sackett and Raoul Francoeur for Respondent.

BARNARD, P. J.—This is an action for damages for in-
juries claimed to have been suffered by the plaintiff when
she stepped into a hole in a city street. The complaint, filed
on December 8, 1953, alleged that the accident happened on
December 12, 1952; that on November 25, 1953, the plaintiff
filed with the city clerk a verified claim in accordance with
the provisions of sections 53050 to 53056 of the Government
Code; that the defendant city "through its agents and em-
ployees" and its insurance carrier informed the plaintiff
that the city was desirous of settling her claim; that the city,
"through its said agents and employees," secured from the

plaintiff a full statement concerning her accident; that the said agents of the city then and there advised the plaintiff it would not be necessary for her to do anything further, and that the city would process said claim and thereafter inform plaintiff as to what it would do about said claim; that because the plaintiff believed the statements of the city made through its agents she did not, for several months, employ an attorney; that she did not take any steps relating thereto until the city through its agents informed her, about 30 days before she filed her claim, that the city and its insurance carrier denied all liability in connection with her injuries; that within a reasonable time thereafter she employed attorneys and presented her claim against the city; that by reason of the foregoing the city waived the requirement that plaintiff file a claim within 90 days; and that the city is estopped by reason of the foregoing to complain of the late filing of plaintiff's claim.

The city filed an answer and a trial was first had on the special issue raised by the pleadings as to whether an equitable estoppel existed, as against the city, which would excuse plaintiff's failure to file a verified claim within the time required by section 53052 of the Government Code.

The plaintiff's husband testified that he was manager of the Northern Orange County Citrus Exchange, and had been in that business for 37 years; that before January 1, 1953, he contacted the city clerk and asked if he had any recourse "and if the city carried insurance to cover this sort of a thing"; that the clerk replied that the city was insured and referred him to the local agent for the insurance carrier; that he then talked to this local agent and "outlined the accident which occurred"; that the agent said he would get in touch with the insurance company; that on January 13, a Mr. Winser came to their home and identified himself as the representative of the insurance carrier; that Winser stated he was there to get the facts; that Winser wrote down a statement of the facts, as given him, which was signed by the plaintiff; that Winser asked him what they had in mind in the way of a settlement, and they told him they could not yet tell what the ultimate results of the accident would be; that they asked Winser "as to when we might hear and what action might be taken further and what procedure would be followed"; that Winser said it would be necessary for him to contact the doctors and submit his report to the insurance company, "and we would hear from

the insurance company in due time"; that they pressed him as to how long this might take and Winser stated that "we would be advised just as soon as the report had been processed"; that they asked Winser if there was anything further they should do and he said there was nothing further they need do, "that we would hear from the insurance company"; that Winser did not tell them not to go to a lawyer; that nothing was said about a lawyer or about money, and Winser did not say when he would be back; that Winser gave him his card; that he did not call Winser; that no one called him or came to see him; that between January 13 and the end of October he talked to no one and made no inquiry of anyone concerning his wife's claim against the city; that about November 1, he called the local agent who later informed him that the insurance company had turned down the claim; and that he then told the agent he would seek legal advice to find out "if we have a claim against the insurance company." When asked why they had not made further contacts during those months, he replied that he saw no point in pressing the matter, and that they hoped to know the extent of his wife's injuries "before we got the word" from the insurance company.

The plaintiff testified to the same effect with respect to what occurred when her statement was taken, and that between January 13 and November 25 she did not call or write to anyone concerning her claim, and no one contacted her. When asked why she did not press this matter during the summer and fall of 1953 she replied: "Well, I still was having so much trouble with my knee I thought it would be better if we waited to see just how badly handicapped I would be before we tried to make a settlement, and it was my impression that after a year elapsed we wouldn't be entitled to anything, so I waited as long before that year elapsed as I possibly could." Mr. Winser testified that he was an insurance adjuster working for an adjustment company in Santa Monica; that he discussed the facts with the plaintiff and her husband on January 13, and took her written statement and also took an authorization to get needed information from her doctors; that he did not do or say anything while there other than to discuss the facts of the accident, take the statement, and have her sign it; that there was no talk about a settlement or contacting them later; that he did not tell them that they would hear from the insurance company, or that they would hear from the city;

that he was not asked, and that he said nothing with respect to whether or not there was anything further they would have to do; and that after January 13 he never talked to either of them in person or by phone.

So far as material here, the court found that Winser called on the plaintiff on January 13, 1953, and in the presence of her husband identified himself as an insurance adjuster employed by Bay Cities Adjustment Company, and working in behalf of the insurance carrier for the defendant city; that he obtained a written statement from the plaintiff and requested authority to further investigate the claim and examine the medical reports of her physician; that plaintiff asked Winser what she was to do next and how long it would take to complete the investigation; that Winser told her that they would hear from him and that there was nothing more they needed to do; that Winser did not offer the plaintiff any money or mention any amount of settlement, or tell her when she would hear from him; that plaintiff was never advised not to retain an attorney and was never advised not to file a verified claim with the city; that neither plaintiff nor her husband heard from or saw Winser again until after the suit was filed; that plaintiff and her husband kept Winser's card containing his telephone number and address; that neither of them from January 13 up to November, 1953, ever attempted to or did contact anyone concerning their alleged claim against the defendant city; that plaintiff filed her alleged verified claim with the city clerk on November 25, 1953; that the reason given by plaintiff and her husband for not filing the claim until the expiration of 11½ months was because she was waiting to see whether or not she would suffer permanent disability; that there was no fraud or deceit in the matter of taking plaintiff's written statement on January 13, as to the facts surrounding the accident; that plaintiff was not lured into a sense of false security by reason of any word or act on behalf of the defendant city, or its agents or employees; and that as a reasonably prudent person the plaintiff was in no way prevented from filing her claim within the time prescribed by law.

The appellant contends that the court's findings to the effect that an equitable estoppel as against the city did not here exist are not supported by the evidence, and that the findings of fact do not support the judgment. It is argued that it is now clearly held, under the usual rules of equity, that a city may be estopped from relying on the statutory requirement for

the filing of a claim within 90 days, where the city does anything which would reasonably tend to mislead a claimant with respect to the necessity for filing such a claim within that time; that it is only natural for a citizen to be more easily lulled into a false sense of security when a city tells him that it will investigate his claim, and there is nothing further he needs to do; and that the court here found that the appellant was told that the city would investigate further, and that there was nothing more that she needed to do.

It is now well settled that a governmental agency may be estopped from relying on the failure to file such a claim within the statutory time when the conduct of its officers or agents was such as to mislead the claimant with respect to the necessity of filing the claim within the required time. (*Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; *Cruise* v. *City & County of San Francisco,* 101 Cal.App.2d 558 [225 P.2d 988]; *Mendibles* v. *City of San Diego,* 100 Cal.App.2d 502 [224 P.2d 42].) In all of those cases the appeals were from judgments based on the pleadings or on the granting of a nonsuit. In the Cruise case, it was pointed out that where an estoppel is pleaded "the question as to whether such estoppel exists is a question which should be left to the trier of fact to be determined as a question of fact, and not determined as a question of law."

Assuming that the evidence here, in view of one of the facts found, would have supported a conclusion and judgment in favor of the appellant, it cannot be held as a matter of law that such a conclusion and judgment were required. The court did not find, as the appellant argues, that she was told by the city that it would investigate her claim and that there was nothing further she needed to do until she heard from the city. The statement in the findings relied on by the appellant was a part of a long finding relating to what the insurance adjuster told the appellant, with respect to how long the investigation would take and as to whether there was anything more she needed to do in connection with that investigation. That this statement in the findings was intended to relate to the investigation being conducted for the insurance carrier, and not to any steps that should or should not be taken in connection with enforcing a claim against the city, rather clearly appears from the other findings, to the effect that the appellant was in no way misled with respect to the filing of a verified claim with the city. No offer of a settlement was made on January 13, no

statement was made that the claim would probably be settled, and nothing was asked or stated except with respect to how long the investigation would take and that the appellant would eventually hear from the adjuster. Although she was given the adjuster's address and telephone number the appellant made no attempt to contact him, the insurance carrier or the city for nearly 10 months, and no claim was filed for about 11½ months after the accident. The evidence rather clearly shows that instead of relying on any representations to the effect that the filing of any suit would be unnecessary, the appellant at all times had the intention of bringing a suit within a year, and was waiting as long as possible before that year elapsed. Her own neglect and her own knowledge and intention had an important bearing on the equitable question presented to the trial court.

There is no evidence of any misleading statements made to appellant by the city or any of its employees, or regular agents. Over a long period the appellant chose to deal with the insurance carrier alone. There were many factual questions presented to the trial court, including the authority of the adjuster to act for and bind the city under these circumstances and for the purpose claimed, the meaning and effect to be given the statements made to the appellant on January 13, the extent of her reliance upon any statements made to her by the adjuster, and her subsequent acts and conduct. In our opinion it cannot be held, as a matter of law, that an estoppel against the city here appears which sufficiently excused the belated filing of the verified claim required by the statute.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied December 16, 1955, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1956.