[Civ. No. 12162. Fourth Dist., Div. Two. May 22, 1973.]

JOHN E. CRUMPLER et al., Plaintiffs and Respondents, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Appellants.

**570**

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Thomas E. Warriner, Deputy Attorneys General, for Defendants and Appellants.

Ralph H. Prince, City Attorney, Sidney Maleck, Assistant City Attorney, and Robert Kelly, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Appellants.

Tomlinson & Steinman and Kenneth W. Nydam for Plaintiffs and Respondents.

**OPINION**

**TAMURA, J.**—Petitioners were hired by the Police Department of the City of San Bernardino as animal control officers. As city employees they became contract members of the Public Employees' Retirement System (system).[1] At the time of employment, each petitioner was classified under the retirement system as a local safety member. Years later, the executive

---

[1] Pursuant to Government Code section 20450 the City of San Bernardino has since 1945 contracted to participate in the Public Employees' Retirement System.

officer of respondent Board of Administration of the Public Employees' Retirement System (board) determined that petitioners had been erroneously classified as local safety members and reclassified them into miscellaneous membership.[2] Following an administrative hearing on the issue of classification, the board determined that petitioners were not entitled to be classified as local safety members and that their reclassification to miscellaneous membership as of the dates they initially became members of the system was proper. Petitioners sought a writ of mandate in the court below to review and set aside the board's decision. The court found in favor of petitioners and entered judgment decreeing that a peremptory writ of mandate issue commanding the board to reinstate petitioners to the classification of local safety members and to treat them as such from the date each became a member of the system. The board appeals from the judgment.

The pertinent facts may be summarized as follows:

Petitioners, with the exception of petitioner Haskins, have been serving as animal control officers ever since their employment. Petitioner Crumpler was employed in 1950; petitioner Davis in 1963; petitioner Ingold in 1965; and petitioner Haskins in 1965. At the time of employment each petitioner was classified as a local safety member under the retirement system and each has since made contributions based upon that classification.

On December 14, 1970, following an investigation the executive officer of the board determined that petitioners should have been classified as miscellaneous members rather than as local safety members. Each petitioner was reclassified and refunded the difference between the amount contributed as a local safety member and the amount he would have contributed had he been a miscellaneous member.[3] Petitioners appealed the reclassification and requested an administrative hearing.[4] The board

---

[2]Government Code section 20018 provides: " 'Local miscellaneous member' includes all employees of a contracting agency who have by contract been included within this system, except local safety members and school members where inconsistent provisions relating to school members appear."

[3]Refunds were made in the following amounts:

| Crumpler | $10,198.95 |
| Ingold | 1,659.91 |
| Davis | 1,154.10 |
| Haskins | 632.20 |

[4]Government Code section 20133 provides: "The board may, in its discretion, hold a hearing for the purpose of determining any question presented to it involving

filed and served upon petitioners a "Statement of Issues" alleging that following a staff investigation and report the executive officer had concluded that the principal duties performed by petitioners "have not been and are not now, active law enforcement service," and has refused to reinstate petitioners to local safety membership classification.

At the hearing before a hearing officer of the Office of Administrative Procedure, the following evidence was adduced:

When petitioners were employed, they were sworn in as police officers and were issued identification cards showing them to be police officers. They wore uniforms bearing the insignia of police officers, carried guns, and were required to be trained in the use of firearms. Their primary duties involved the enforcement of state and local laws and ordinances pertaining to the licensing, control and maintenance of animals. In performing those duties they sometimes used marked police vehicles equipped with police radios and were occasionally called upon to serve as back up officers at the scene of a crime. At the time of employment, each petitioner was informed he would be entitled to the same retirement benefits as policemen and each accepted employment on the strength of that representation.

Petitioner Crumpler has served as an animal control officer for 20 years. On December 12, 1970, he attained the age of 55. As a local safety member, at age 55 he would have been entitled to retire with substantial benefits. As a miscellaneous member he could retire at age 55 but would not receive substantial benefits until he attained the age of 65.

Petitioner Haskins was initially hired as a police patrolman but transferred to the animal control division in April 1965. After serving as an animal control officer for five years and four months, in February 1971 he retransferred to patrolman status.

Prior to his employment by the City of San Bernardino as an animal control officer, petitioner Ingold was a civil service employee of the United States Air Force with 15 years of service. In deciding whether to accept employment with the city police department, he weighed the relative advantages of the United States government pension system against the benefits he would receive as an employee of the police department and upon being advised that he would receive retirement benefits as a local safety

any right, benefit, or obligation of a person under this part. Where a hearing is held, the proceedings shall be conducted in accordance with Chapter 5 of Part 1 of Division 3 of Title 2 of this code, and the board shall have all of the powers granted therein; except that Section 11508 of this code shall not apply, and the hearing shall be held at such time and place as may be determined by the board."

member under the city's retirement system, he accepted city employment. When he did so, he lost his federal civil service retirement benefits.

The hearing officer rendered a proposed decision in which she found that while animal control officers are part of the city's police department personnel, "their assigned duties do not fall within the scope of active law enforcement service even though such an employee is subject to occasional call or is occasionally called upon to perform duties within the scope of active law enforcement service." She therefore concluded that petitioners had been erroneously classified as local safety members. However, she further concluded that since petitioners accepted employment and rendered services in reliance upon the representation that they were local safety members, the city was estopped from asserting that petitioners had been erroneously classified and from reclassifying them to miscellaneous membership.

The board refused to adopt the hearing officer's proposed decision and elected to decide the case itself upon the administrative record.[5] The board found that petitioners' duties as animal control officers "do not fall within the scope of active law enforcement service," concluded that petitioners had been improperly classified as "local safety members," and upheld their reclassification to miscellaneous membership. The petition for writ of mandate to review and set aside the board's decision ensued.

The trial court found, inter alia, that petitioners' employment duties "require and consistently demand that they engage in active law enforcement" and that while employed by the city they "have continuously performed assigned duties which require that they engage in active law enforcement." The court further found that prior to accepting employment as an animal control officer each petitioner was informed that he would be a local safety member in the retirement system and that each relied upon the representation in accepting employment, rendering services, and making contributions to the system. The court concluded: (1) Petitioners were entitled to be classified as local safety members by virtue of Government Code section 20019[6] and (2) the board was estopped from reclassifying them into miscellaneous membership. Judgment was entered directing

---

[5]Government Code section 11517, subdivision (c) provides in pertinent part: "(c) If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same hearing officer to take additional evidence."

[6]All section references hereafter are to the Government Code unless otherwise indicated.

the issuance of a peremptory writ of mandate commanding the board to reinstate petitioners as local safety members from the date each became a member of the system and restraining the board "from taking any further proceedings in the matter of the membership classification" of petitioners. The board appeals from the judgment so entered.

On this appeal, the City of San Bernardino was granted leave to file a brief "amicus curiae in support of appellants." The city contends it was an indispensable party to the mandate proceedings (and by implication to the administrative proceedings) and that the court below was without jurisdiction to proceed without making the city a party.

For the reasons which follow, we have concluded: (1) The city was not an indispensable party to either the administrative or mandate proceedings; (2) the board's determination that petitioners had been erroneously classified as local safety members must be upheld; (3) the board is estopped from reclassifying petitioners *nunc pro tunc* as of the date they became members of the system but may reclassify them prospectively.

I

The city urges it was an indispensable party to the mandate proceedings because the decree affects both the city's fiscal interests and its power to transfer its employees to another city department and to assign them new duties. It is urged that under the decree the city's contribution to the retirement fund would be greater than that required if petitioners were classified as miscellaneous members and moreover that the decree would preclude the city from transferring petitioners to another city department or changing their duties. It also contends that had it been a party, it could have offered evidence to show that assistant humane officers have now been transferred from the police department to the "Animal Control and Parking Department," their job title and duties have been changed, and they no longer carry guns, wear police uniforms or engage in any active law enforcement duties. The city's contentions must be rejected.

█ The city was not an indispensable party to the administrative proceedings. It contracted to have its designated employees become members of the Public Employees' Retirement System as administered by the board and subject to all of the applicable provisions of the Public Employees' Retirement Act. The management and control of the retirement system is vested exclusively in the board (§ 20103) and it is empowered to determine "who are employees and is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under

this system." (§ 20124) The board is authorized, in its discretion, to hold hearings for the purpose of determining questions involving "any right, benefit, or obligation of a person" under the act, such hearings to be conducted in accordance with chapter 5, part 1, division 3, title 2 of the Government Code. (§ 20133.) Section 11500 defines parties as including "the agency, the respondent and any person, other than an officer or an employee of the agency in his official capacity, who has been allowed to appear in the proceeding," and respondent as "any person against whom an accusation is filed pursuant to Section 11503 or against whom a statement of issues is filed pursuant to Section 11504." Thus, the only proper parties were the board and petitioners whose rights were in question. While the city, with the approval of the board, might have intervened in the proceedings, it never sought to do so although it concedes it was aware of its pendency. The city clearly was not an *indispensable* party to the administrative hearing.

Nor was the city an indispensable party to the mandate proceeding. That proceeding being one for judicial review of the administrative decision of the board approving reclassification of petitioners, the board was the only necessary and proper party. (See *Dierkes* v. *City of Los Angeles,* 25 Cal.2d 938, 946 [156 P.2d 741].) The petition for writ of mandate did not seek to restrict or otherwise put in issue the city's power to change petitioners' duties or to transfer them to a different department of the city government. Nor does the decree purport to enjoin the city from exercising its control over the duties and assignments of petitioners. The judgment simply enjoins the board from reclassifying petitioners as long as their employment status and duties remained unchanged. The Public Employees' Retirement Act provides that the chief administrative officer of a contract agency shall furnish monthly reports to the board showing any changes in the status of all members employed by the contracting agency and such other information as required by the board in the administration of the system. (§ 20162.) The decree does not purport to enjoin the city from performing its duty under that section.

The additional evidence which the city claims could have been adduced had it been a party to the mandate proceedings would have been inadmissible (*Borror* v. *Department of Investment,* 15 Cal.App.3d 531, 537 [92 Cal.Rptr. 525]) unless it were shown that in the exercise of reasonable diligence the evidence could not have been produced before the board or that it had been improperly excluded by the board. (*Dare* v. *Bd. of Medical Examiners,* 21 Cal.2d 790, 799 [136 P.2d 304].) No such showing has been made.

Turning to the merits of the appeal, the board contends that under the evidence petitioners had been improperly classified as local safety members and were properly reclassified into miscellaneous membership. It is further urged that there was no valid basis for the invocation of estoppel against the board. We proceed to those issues.

II

On the question of proper classification we must look initially to the statute. Section 20019 provides: " 'Local safety member' includes all local policemen . . . employed by a contracting agency who have by contract been included within this system." As of the date of the board's decision, section 20020 provided: " 'Local policeman' means any officer or employee of a police department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and *whose functions do not clearly fall within the scope of active law enforcement service* even though such an employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement service, but not excepting male employees assigned to identification or communication duties, or persons employed and qualifying as patrolmen or equal or higher rank irrespective of the duties to which they are assigned."[7] (Italics supplied.)

Petitioners were admittedly employees of the city police department. The only question is whether their principal duties or functions "clearly fall within the scope of active law enforcement service." The board found that petitioners' principal duties did not, whereas the court found they did.

The resolution of the issue thus presented does not turn on whether the proper scope of judicial review of an administrative factual finding is whether it is supported by substantial evidence on the whole record or whether the court must exercise its independent judgment. (See *Bixby* v. *Pierno,* 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) The evidence was uncontradicted that although petitioners occasionally served as back up officers at the scene of a crime or in the apprehension of criminal suspects, their primary duties and functions pertained to the enforcement of animal control laws. Thus, whether the performance of those duties "clearly fall within the scope of active law enforcement service" within the meaning of the statute becomes one of statutory interpretation (*Merrill* v.

---

[7]Section 20020 was amended in 1972 (stats. 1972, ch. 560) in particulars not pertinent to the present case.

*Department of Motor Vehicles,* 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33]) and we are not bound by either the board's or the trial court's determination which, though expressed as findings of fact, are but legal conclusions.

The phrase "active law enforcement service" appears in various sections of the Public Employees' Retirement Act (e.g., §§ 20017.5, 20021.5) as well as in the County Retirement Law of 1937 (e.g., §§ 31469.3, 31470.3, 31470.6, 31558) and the Labor Code (e.g., §§ 4850, 3212). In an opinion discussing the meaning of the term "active law enforcement" for the purpose of determining eligibility as a "safety member" under the County Employees' Retirement Law of 1937 (§§ 31469.3, 31470.3), the Attorney General observed: ". . . It is not possible to provide any more than a broad definition of what constitutes active law enforcement within the intendment of the County Employees' Retirement Law. We would say generally that it includes positions, the principal duties of which pertain to the active investigation and suppression of crime; the arrest and detention of criminals and the administrative control of such duties in the offices of the sheriff and district attorney. It is suggested that active law enforcement work means 'physically active' work such as the arrest and detention of criminals. While the main reference is to duties which expose officers and employees to physical risk in the law enforcement field (see Gov. Code sec. 31901), we believe that the statute reaches persons who are supervising the performance of such duties in the sheriff's and district attorney's offices." (22 Ops.Cal.Atty.Gen. at p. 229.)

The board asserts that in the administration of the Public Employees' Retirement System it has consistently followed the Attorney General's definition of "active law enforcement service" as expressed in the foregoing opinion. In an affidavit which was received in evidence by the hearing officer, the board's executive officer stated that all members of the Public Employees' Retirement System whose duties were known as "Animal Control Officer, Humane Officer, Dog Catcher, Pound Officer and the like" were in the miscellaneous membership category and there were no exceptions unless the system had not been informed of the actual duties of the member.[8]

---

[8]The affidavit stated in pertinent part:

". . . All members of the Public Employees' Retirement System whose duties are known to be Animal Control Officer, Humane Officer, Dog Catcher, Pound Officer, and the like are presently in the miscellaneous member category and presently entitled to all the incidents of such membership.

". . . There are no exceptions to this situation procedurally. If the Public Em-

■ The ultimate interpretation of a statute is of course an exercise of judicial power and it is the responsibility of the courts to declare its true meaning even if it requires rejection of an earlier erroneous administrative interpretation. (*People* v. *Navarro*, 7 Cal.3d 248, 274 [102 Cal.Rptr. 137, 497 P.2d 481]; *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 917, fn. 15; *Atlantic Oil Co.* v. *County of Los Angeles,* 69 Cal.2d 585, 599 [72 Cal.Rptr. 886, 446 P.2d 1006]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]; *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321, 326 [109 P.2d 935].) ■ Nevertheless, the contemporaneous interpretation of a statute by an administrative agency charged with its enforcement and interpretation, while not controlling or required to be inevitably followed, is entitled to great weight unless it is clearly erroneous or unauthorized (*Rivera* v. *City of Fresno,* 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Cannon* v. *Industrial Acc. Comm.,* 53 Cal.2d 17, 22 [346 P.2d 1]), and evidence of such contemporaneous administrative construction is admissible as proof of a relevant fact. (*Walsh* v. *Dept. Alcoholic Bev. Control,* 59 Cal.2d 757, 762 [31 Cal.Rptr. 297, 382 P.2d 337].)

The Public Employees' Retirement Act vests "the management and control" of the system in the board (§ 20103) and the board is empowered to "determine who are employees and is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under [the] system." (§ 20124.) In view of the powers thus conferred upon the board, its contemporaneous construction of the Public Employees' Retirement Act is entitled to great weight and ought not to be overturned unless it is clearly erroneous. ■ In the instant case we believe the board's construction of the statutory phrase "active law enforcement service" as used in section 20020 comports with the Legislature's intention.

The provision of a special category of retirement membership for policemen relates to the hazardous nature of their occupation. (Cf. *Kimball* v. *County of Santa Clara,* 24 Cal.App.3d 780, 785 [101 Cal.Rptr. 353].) The phrase "active law enforcement service" as used in section 20020 was no doubt intended to mean law enforcement services normally performed by policemen. As the Attorney General has suggested, it means the active enforcement and suppression of crimes and the arrest and detention of criminals. (22 Ops.Cal.Atty.Gen., *supra,* 227, 229.) In a loose sense animal

ployees' Retirement System has not been informed of actual duties or the member actually performs active law enforcement duties, then he might not or would not be a miscellaneous member."

control officers are engaged in active law enforcement but so are a myriad of other public employees such as building inspectors, health officers, welfare fraud investigators and the like but their duties can hardly be said to constitute "active law enforcement service" as contemplated by the statute. The crimes with which policemen normally deal are those against persons and property and not violations of police regulations. Petitioners' duties as animal control officers cannot be said to "clearly fall within the scope of active law enforcement service" as that term is used in section 20020.[9] The board's determination that petitioners were improperly classified as local safety members must be upheld.

The question remains whether the board was estopped from reclassifying petitioners to miscellaneous membership.

### III

On the issue of estoppel we preliminarily review principles by which we should be guided in applying the doctrine against the government. We reviewed those principles in *Shoban* v. *Board of Trustees,* 276 Cal.App.2d 534 [81 Cal.Rptr. 112], where we stated: "The theory that estoppel may not be asserted against a governmental agency is a progeny of the broader doctrine of sovereign immunity. (See 2 Davis, Administrative Law Treatise, 491, 492.) In this state, the doctrine of sovereign immunity has been repudiated as 'an anachronism, without rational basis.' (*Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211, 216 [11 Cal.Rptr. 89, 359 P.2d 457]; see 2 Witkin, Cal. Procedure (1954) § 46.) The rigid application of the concept that estoppel may not be invoked against the government is likewise inconsistent with the underlying principles of a democratic society. A citizen ought to have the right to expect his government to deal fairly with him. In *Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323], in holding that the county was estopped from rejecting a claim for noncompliance with a claim statute, the court noted at page 628: 'It has been aptly said: "If we say with Mr. Justice Holmes, 'Men

---

[9]*Noroian* v. *Department of Administration,* 11 Cal.App.3d 651 [89 Cal.Rptr. 889], and *Ralston* v. *State Employees' Retirement System,* 273 Cal.App.2d 228 [78 Cal. Rptr. 31], cited by petitioners are inapposite. They involved the interpretation of former Government Code section 21292.8 pertaining to disability retirement of an employee in the Department of Corrections "having custodial duties." In each case the employee spent a substantial portion of his time performing custodial duties. Moreover, the two decisions were based in part upon the fact that the statute contained no qualification limiting coverage to those whose duties were principally or primarily custodial. In the case at bench the statute excepts those whose principal duties are not clearly within the scope of active law enforcement even though they may occasionally perform or be called upon to render such service.

must turn square corners when they deal with the Government,' it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens." (48 Harv.L.Rev. 1299.)' (*Woodie* v. *Byram,* 132 Cal.App.2d 651, 654 [282 P.2d 920].) Commentators have been uniformly critical of judicial reluctance to invoke the doctrine of estoppel against a governmental agency where justice and equity so require. (2 Davis, Administrative Law Treatise, *supra,* pp. 514-519; Newman, *Should Official Advice be Reliable?* 53 Colum.L.Rev. 374; Comment, *Never Trust a Bureaucrat: Estoppel Against the Government,* 42 So.Cal.L.Rev. 391; Comment, *Estoppel Against the Government in California,* 44 Cal.L.Rev. 340.)

"In this state we have rejected the rigid application of the notion that equitable estoppel may not be invoked against the government. The doctrine has most commonly been applied where tort claimants have been misled by governmental employees with respect to procedural or time requirements of a claim statute. (*Rand* v. *Andreatta,* 60 Cal.2d 846, 849 [36 Cal.Rptr. 846, 389 P.2d 382]; *Farrell* v. *County of Placer, supra,* 23 Cal.2d 624, 628; *Cruise* v. *City and County of San Francisco,* 101 Cal. App.2d 558, 563 [225 P.2d 988]; see *Merco Constr. Engineers, Inc.* v. *Los Angeles Unified School Dist.,* 274 Cal.App.2d 154, 160 [79 Cal.Rptr. 23].) The application of the doctrine, however, has not been confined to such cases. It has been applied in many varying situations. (See *Farrell* v. *County of Placer, supra,* 23 Cal.2d 624, 627-628.) For example, the doctrine has been applied to estop a school district from denying a teacher permanent classification (*Briney* v. *Santa Ana High School Dist.,* 131 Cal.App. 357, 361 [21 P.2d 610]; *Crawford* v. *Board of Education,* 20 Cal. App.2d 391, 396 [67 P.2d 348]); to estop a municipality from asserting a violation of a zoning regulation (*Woodie* v. *Byram, supra,* 132 Cal.App.2d 651, 654); to estop a city from denying the validity of a contract to serve water to a subdivision outside the boundary of a city (*Sawyer* v. *City of San Diego,* 138 Cal.App.2d 652, 662 [292 P.2d 233]); and to estop a city from abandoning a condemnation action (*McGee* v. *City of Los Angeles,* 6 Cal.2d 390, 394 [57 P.2d 925]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 326 [44 P.2d 547].)

"It has been said that ordinarily estoppel should not be invoked where to do so would be harmful to some specific public policy or public interest or where it would enlarge the power of a governmental agency or expand the authority of a public official. (*McNeil* v. *Board of Retirement,* 51 Cal.2d 278, 285 [332 P.2d 281]; *Boren* v. *State Personnel Board,* 37 Cal.2d 634, 643 [234 P.2d 981]; *County of San Diego* v. *California Water*

*etc. Co.,* 30 Cal.2d 817, 825, 826 [186 P.2d 124, 175 A.L.R. 747].) Subject to those qualifications, estoppel may be invoked against a governmental agency where 'justice and right require it.' (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 306 [61 Cal.Rptr. 661, 431 P.2d 245]; *Sawyer* v. *City of San Diego, supra,* 138 Cal.App.2d 652, 662.)" (*Shoban* v. *Board of Trustees, supra,* 276 Cal.App.2d 534, 542-544.)

The most recent pronouncement by our Supreme Court on the application of equitable estoppel against the government is in *City of Long Beach* v. *Mansell,* 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423]. ■ The court there declared it to be settled that "'[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it'" but that an estoppel will not be applied against the government if to do so would effectively nullify "'a strong rule of policy, adopted for the benefit of the public, . . .'" (At p. 493.) The court observed that "[t]he tension between these twin principles makes up the doctrinal context in which concrete cases are decided." After a review of a number of cases the court phrased the rule governing the application of equitable estoppel against the government as follows: ". . . The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (3 Cal.3d at pp. 496-497.)

■ The elements which must be present in order to invoke equitable estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 305.) ■ Although estoppel is generally a question of fact, when the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of an estoppel is a question of law. (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 305; *Cal. Cigarette Concessions* v. *City of L. A.,* 53 Cal.2d 865, 869-870 [3 Cal.Rptr. 675, 350 P.2d 715].)

■ Applying the foregoing principles to the instant case, the city would be clearly estopped from seeking petitioners' reclassification to miscellaneous membership as of the date they initially become members of the system.

All of the requisite elements of equitable estoppel are present insofar as the city is concerned. The city was apprised of the facts. The city knew that petitioners were being employed by the police department as animal control officers at the time it erroneously advised them they would be entitled to retirement benefits as local safety members. The fact that the advice may have been given in good faith does not preclude the application of estoppel. Good faith conduct of a public officer or employee does not excuse inaccurate information negligently given. (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 307-308; *Orinda-County Fire Protection Dist.* v. *Frederickson and Watson Co.,* 174 Cal.App.2d 589, 593 [344 P.2d 873].) In a matter as important to the welfare of a public employee as his pension rights, the employing public agency " 'bears a more stringent duty' " to desist from giving misleading advice. (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 308.) In the instant case the erroneous representations that petitioners would be entitled to local safety memberships if they accepted city employment was given without verifying its accuracy either by advice from the board or any other qualified person.

All of the other requisite elements of equitable estoppel against the city were established by uncontradicted evidence. The city manifestly intended its erroneous representations to be acted upon and petitioners had a right to believe the city so intended. Petitioners were ignorant of the fact that the city's advice was erroneous. Petitioners relied upon the representations to their injury by relinquishing other employment to accept city employment and by paying over the years the greater contributions required of safety members. Petitioner Crumpler served as animal control officer for over 20 years. During those years he paid safety member contributions and arranged his personal financial affairs in the expectation he would ultimately receive the retirement benefits of a safety member. Petitioner Ingold relinquished federal civil service employment with 15 years accrued federal pension rights to accept city employment on the representation that his city pension rights would be that of a safety member.

The board virtually concedes the city would be estopped but urges that estoppel may not be invoked against the board because it had no knowledge that petitioners were employed as animal control officers and not policemen until a routine investigation in 1968 revealed the true facts. We reject the board's position.

The relationship between the city and the board is such that estoppel of the city is binding on the board. An estoppel binds not only the immediate parties to the transaction but those in privity with them. (*Lerner* v. *Los Angeles City Board of Education,* 59 Cal.2d 382, 397 [29 Cal.

Rptr. 657, 380 P.2d 97]; *People* ex rel. *Dept. Pub. Wks.* v. *Volz,* 25 Cal. App.3d 480, 489 [102 Cal.Rptr. 107]; *Citizens Suburban Co.* v. *Rosemont Dev. Co.,* 244 Cal.App.2d 666, 680 [53 Cal.Rptr. 551].) Privity is generally defined as a relationship in which a person is so identified in interest with another that he is said to represent the same legal right; its discernment resting upon a case-by-case examination. (*Citizens Suburban Co.* v. *Rosemont Dev. Co., supra,* 244 Cal.App.2d 666, 680.) "[E]stoppel by privity is not a static notion, but adaptable to the practical demands of the situation." (*Citizens Suburban Co.* v. *Rosemont Dev. Co., supra,* p. 680.)

 A public agency may not avoid estoppel by privity on the ground the conduct giving rise to estoppel was committed by an independent public entity. (*Lerner* v. *Los Angeles City Board of Education, supra,* 59 Cal.2d 382, 398-399.) In *Lerner* a teacher failed to bring an action for reinstatement against the city school board within the statutory period. The teacher had relied upon the erroneous advice of representatives of the State Board of Education that the board lacked jurisdiction to restore his credential and that no school district could legally employ him. The court rejected the city school board's contention that it could not be estopped by the conduct of the State Board of Education because they were independent entities. The court stated: "Privity does not depend upon whether the parties constitute independent legal entities; successive owners of property often assume the relationship of privity although they are independent legal persons. 'Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right.' (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461], quoting 30 American Jurisprudence 957 [now 30A American Jurisprudence 451].) Thus the courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government." (*Lerner* v. *Los Angeles City Board of Education, supra,* 59 Cal.2d 382, 398, fn. omitted.)

The rationale of *Lerner* is apposite to the case at bench. In the administration of the Public Employees' Retirement System as it pertained to city contract members, the city and the board were agents of the state. Their interests were mutual and not independent. "Justice and right" require that the state be estopped from asserting the past misclassification of petitioners as local safety members of the retirement system. The city and the board being in privity with each other as agents of the state, estoppel of

the city to assert that petitioners had been erroneously classified must necessarily extend to the board.

Nor may estoppel be avoided on the ground that to invoke it would enlarge the statutory power of the board. In view of the statutory powers conferred upon the board by section 20124, this is not a case where the governmental agency "utterly lacks the power to effect that which an estoppel against it would accomplish." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 499.)

■ The effect, if any, upon public interest or policy of invoking estoppel with respect to petitioners' past service is not of sufficient dimension to justify its rejection. In *Shoban* v. *Board of Trustees, supra,* 276 Cal. App.2d 534, we held that a school district was estopped from seeking recovery of overpayment of teachers' salaries resulting from an erroneous classification where the teachers accepted employment and rendered services in reliance upon the representation that they were entitled to that classification. In reaching that conclusion we cited, among other authorities, *Semaan* v. *Mumford,* 335 F.2d 704 [118 App.D.C. 282], where it was held that an employee of the Library of Congress had alleged sufficient facts to show that the government was estopped to deny him the status of a permanent employee. We noted Chief Judge Bazelon's pertinent observation in *Semaan* (fn. 6, p. 706): "Since the Government agency to be estopped here possessed the authority to do what it appeared to be doing, was not depriving the public of the protection of any statute, and was acting in a proprietary capacity *qua* employer, there is no reason to bar an estoppel here." Were the issue in the case at bench one involving the pension rights of a private employee, there is little doubt that estoppel would be invoked against the employer. We discern no harmful effect upon any specific public policy or interest which would result from invoking estoppel in the instant case where pension rights of a public employee are involved. We conclude the board is estopped from reclassifying petitioners *nunc pro tunc* as of the date of their initial membership in the system.

■ We will not, however, extend estoppel to preclude the board from reclassifying petitioners prospectively from the date of the board's decision. Public interest and policy would be adversely affected if petitioners, despite the discovery of the mistaken classification, were required to be continued to be carried as local safety members when all other contract members of the retirement system throughout the state performing like duties and functions are classified as miscellaneous members. Manifestly, it would have a disruptive effect on the administration of the retirement system.

The conclusion we have reached respecting the extent to which the board should be estopped is in keeping with, if not compelled by, the provisions of section 20180 pertaining to the duty of the board to correct errors. The section provides when the board finds that through "inadvertence, oversight, mistake of fact, mistake of law, or other cause" any act required by law to be taken by the system was not taken or performed when it should have been taken or performed, the board "shall cause the books, accounts and records of this system to be corrected accordingly, so as to make the *status, rights, and obligations of the employee or member,* his public employer and this system the same in every respect that they would be if the action had been duly taken or performed at the proper time." The section further provides, however, that "[i]f the board finds that (1) *the facts and circumstances are such that the action cannot be taken or performed as of the date it should have been taken or performed,* or that (2) if it is so taken or performed, the status, rights, and obligations of the employee or member, his public employer, and this system cannot be made the same that they would be if the action had been taken or performed at the proper time, or that (3) *the purposes of this part will not be effectuated if the action is taken or performed as of the date it should have been taken or performed,* the board shall take or perform the action, or order it to be taken or performed, *as of the time the action is actually taken, and the status, rights, and obligations of the employee or member, his public employer, and this system shall be those which result from the action at the time it is actually taken."* (Italics supplied.)

For the reasons we have heretofore stated, in the present case "the facts and circumstances are such that the action cannot be taken or performed as of the date it should have been taken or performed" and "the purposes of [the retirement act] will not be effectuated if the action is taken or performed as of the date it should have been taken or performed." The correction must therefore be made as of the date of the board's decision ordering it to be made.

Petitioners' contention that the board is forever precluded from reclassifying them because they have a vested right to be classified as local safety members is devoid of merit. It is true that upon acceptance of public employment provisions of the applicable pension law become an integral part of the contract of employment (see *Symington* v. *City of Albany,* 5 Cal.3d 23, 32 [95 Cal.Rptr. 206, 485 P.2d 270]; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851-852 [179 P.2d 799]), and that any modifications affecting earned pension rights of active employees must be reasonable, related to the theory of a sound pension system, and any changes

detrimental to the individual must be offset by comparable new advantages. (*Lyon* v. *Flournoy,* 271 Cal.App.2d 774, 782 [76 Cal.Rptr. 869]; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438; 447-449 [326 P.2d 484]; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765].) However, correction of an erroneous classification cannot be equated to a modification or alteration of earned pension rights. Petitioners have no vested right in an erroneous classification. Indeed, as we have noted, the act expressly provides for correction of errors such as occurred in the instant case. The provisions of section 20180 being as much a part of the contract of employment as other provisions of the retirement act, exercise of the power conferred by the section involves no violation or impairment of petitioners' contractual or vested rights.

 It is our conclusion that the board is estopped from reclassifying petitioners for the period of membership prior to the board's decision of August 18, 1971, but is not so estopped from reclassifying petitioners to miscellaneous membership prospectively from the date of the decision.

Judgment is reversed and the trial court is directed to enter a new judgment consistent with the views expressed in this opinion.

Gardner, P. J., and Kerrigan, J., concurred.